## GROVER RHOADES v. STATE.

No. A-2940—Opinion Filed Oct. 18, 1919.

(184 Pac. 913.)

1. **APPEAL AND ERROR—Assignment of Error—Sufficiency of Information.** An assignment of error that "the verdict is contrary to the law and the evidence" does not raise the question of the sufficiency of the information. To raise the question of the sufficiency of an information in the appellate court, a demurrer or other proper objection should be made thereto in the trial court.

2. **APPEAL AND ERROR—Conviction—Sufficiency of Evidence.** Where there is evidence in the record which, if believed by the jury, is sufficient to support the conviction, the appellate court will not reverse the judgment because of the alleged insufficiency of the evidence.

3. **TRIAL—Instructions—Evidence.** The trial court should not instruct upon any degree of the crime of which there is no evidence tending to show the defendant's guilt.

4. **APPEAL AND ERROR—Briefs—Rulings on Evidence.** Where the brief on behalf of defendant fails to comply with rule 7 of this court, by incorporating therein "the full substance of the evidence admitted or rejected, stating specifically the objection thereto," this court will not closely scrutinize the record for the purpose of substantiating defendant's claim, when the alleged error relates solely to the admission or rejection of evidence.

5. **NEW TRIAL—Newly Discovered Evidence—Discretion of Trial Court.** Motions for a new trial on the ground of newly discovered evidence are addressed to the discretion of the trial court, and, unless the newly discovered evidence is material to the issues and and it is clearly probable that upon a subsequent trial a different result would occur because of such evidence, a new trial will not be granted.

6. **APPEAL AND ERROR—Prejudicial Error—Instruction.**—Where the trial court gives certain oral instructions to the jury, part of which were afterwards reduced to writing and filed as a part of the record in the case, and part of which were not reduced to writing, and it is apparent to this court, after a careful consideration of the entire record, that the jury was probably misled as to the law of the case to the substantial prejudice of the defendant by reason of the giving of such oral instructions, the judgment of conviction will be reversed, and the cause remanded.

*Appeal from District Court, Canadian County;*
*Geo. W. Clark, Judge.*

Grover Rhoades was convicted of the crime of robbery, and sentenced to serve a term of ten years' imprisonment in the state penitentiary, and appeals. Reversed and remanded.

This is an appeal from a judgment of conviction in the district court of Canadian county against the defendant for the crime of robbery, in which a sentence was imposed against him of ten years' imprisonment in the penitentiary at McAlester.

The defendant and his brother, Homer Rhoades, were residents of the city of El Reno, Okla., and had been for over 20 years. The defendant at the time of this occurrence was engaged in keeping a rooming house in the

northwest part of El Reno, at which said house the evidence shows intoxicating drinks were to be had. Across from the defendant's place of business, his brother, Homer Rhoades, had a similar establishment, and it was at or near Homer Rhoades' place that this alleged crime was committed.

The prosecuting witness, Truscott, and a man by the name of Ermis, and another by the name of Mosig, happened into El Reno on the day of this alleged crime. Ermis claims to have come from Herrington, Kan., and to have arrived at El Reno about 10 o'clock in the morning. Truscott and Mosig came in on the same train that day, arriving about 10 o'clock at night. Truscott claims to have come from some place in Kansas and Mosig got on the train at Enid, Okla. Ermis, Truscott, and Mosig all testified that their meeting in El Reno on that day was purely by accident; that there was no prearrangement to meet there between them, Truscott and Mosig testifying that they were on their way to Oklahoma City, while Ermis testified that he happened into El Reno for the purpose of selling some "temperance drinks" called "Temp Brew" and "Non Tax," for which he was agent, having a distributing house for these articles in Kansas City, Mo. It appears from the evidence that Mosig and Ermis had been acquainted with each other for some six or seven years, also that Mosig and Truscott had known each other for some five or six years, but Truscott and Ermis claim not to have known each other before their meeting in El Reno on this occasion.

Mosig was a professional gambler, and one commonly known as a "card sharp." This he admits. Truscott is shown by his testimony to be practically an habitual gambler, although he denies making a living at gambling;

but his testimony shows that he has wandered about the country considerable and engaged often in the pastime of gambling. Ermis also, while engaged in the wholesale liquor business in Kansas City, Mo., was very fond of the sport of gambling, and frequently engaged in it. According to Mosig, Ermis was what was called by professional gamblers a "sucker." Rhoades is also shown to be not averse to participating in the great American game of draw poker, and when these four gentlemen of such similar proclivities met on the night of the 18th of July, 1916, it is not surprising that a game of draw poker was arranged between them. This game took place on the premises of "Babe" (or Homer) Rhoades in the city of El Reno. It commenced about midnight, and lasted some two hours, when it broke up in a general row, which resulted in the institution of this prosecution.

It seems that Mosig was engaged in the fine art of "daubing" the cards, according to his own special process, the implements for which he carried with him, consisting of a thimble worn on the forefinger and some special ink. The discovery of the process of "daubing" the cards by the defendant, Rhoades, broke up the game, and caused the trouble. Truscott had won a big "pot" from Rhoades, and a dispute arose in which the brother of Grover Rhoades, Homer Rhoades, grabbed the cards from the table, with the remark that, "You fellows can't win any money off of us." Truscott says that then he put the money in front of him into his pocket, and was immediately struck in the face with a beer bottle by the defendant, Grover Rhoades. Thereupon the lights went out, and Truscott said that, after being beat over the head considerably in the house, he managed to get out through the door and onto the street, where he was followed by the defendant, Grover Rhoades,

who continued to beat him over the head, and took from his person all the money that he had, consisting of $57 which he had taken with him that evening and about $60 additional which he had won in the poker game. Truscott testifies that this money was taken from his person by force and by putting him in fear of immediate and serious bodily harm. Shortly after this occurrence, Truscott appeared at the Southern Hotel in El Reno, badly beat up and bleeding from wounds on the head and face. Truscott is corroborated in the main as to what occurred before the lights went out by the witness Ermis.

The defendant, Rhoades, tells a different story as to what occurred, contending that he did not take any money off of the person of Truscott, but that, when he saw that he was being cheated in the card game by Truscott and his associates, he snatched from the table the money that was in the last "pot," which Truscott claimed to have won, and put it in his own pocket. Rhoades denies taking any money off the person of Truscott on the outside of the house, or at any other time or place, but admits that he went out of the house and was with Truscott on the outside of the house, but went out there because Truscott was calling for assistance and to see if he could not help him by getting a doctor to dress his wounds.

After the trouble subsided, Truscott, Mosig, and Ermis went back to the Southern Hotel. Rhoades also went up there, and left with the night clerk of the hotel $130 in currency. Truscott's wounds were dressed by a physician, who testified that Truscott appeared somewhat dazed and stated that he had been relieved of some money, but did not state who did it. There is also some evidence that Rhoades told the other parties that they had better get out of town and avoid any further trouble.

The investigation of the trouble by the officers led to the commencement of this prosecution against Rhoades, and in his subsequent conviction of robbery in the first degree.

*Pruiett, Day & Sniggs,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). Counsel for defendants group the second and fourth assignments of error, and discuss the same together. Such assignments are:

"(2) The verdict is contrary to the law and the evidence."

"(4) The court erred in overruling the demurrer of the defendant to the evidence of the state."

Under these assignments, counsel urge that the information is defective, also that there was a variance between the allegations of the information and the proof of the crime of which the defendant was convicted, and for these reasons it is urged that the overruling of the demurrer of the defendant to the evidence was reversible error. The argument interposed, or rather the reasons given, in support of the assertion that the second and fourth assignments of error constitute grounds for reversal of the judgment of conviction, have no relation whatever to said assignments.

No demurrer was interposed to the information; neither was any request made of the trial court to instruct the jury to return a verdict of not guilty because of variance between the allegations and the proof. The information not being attacked in the trial court, it is too late to urge that the same is defective for the first time in

this court. An examination of the information, however, discloses a sufficient charge of robbery in the first degree against the defendant, and had a demurrer been interposed, it would not have been error to overrule the same. There is no merit in the assignment that the court erred in overruling the demurrer of the defendant to the evidence of the state. The testimony of Truscott and Ermis, if believed by the jury, was sufficient to support a conviction of robbery in the first degree. *Caido v. State,* 7 Okla. Cr. 139, 122 Pac. 734; *Prather v. State,* 14 Okla. Cr. 327, 170 Pac. 1176; *Bell v. State,* 14 Okla. Cr. 167, 168 Pac. 827.

The third, fifth, and eighth assignments of error are grouped together and presented as one proposition. Said assignments are as follows:

"(3) The court erred in admitting over the objection of defendant incompetent, irrelevant, and immaterial testimony."

"(5) The court erred in refusing to instruct the jury to the effect that, if the defendant's only purpose was to recover money that he was cheated out of or lost in the game by fraudulent means upon the part of Truscott, they should acquit him."

"(8) The court erred in refusing to define robbery in the second degree in its instructions to the jury."

Assignment No. 8 will be considered first. An examination of the record discloses no refusal upon the part of the trial court to instruct on or define robbery in the second degree. Counsel for defendant made no such request of the court. Section 5905, Rev. Laws 1910, provides:

"In charging the jury, the court must state to them all matters of law which it thinks necessary for their information in giving their verdict, and if it states the testimony of the case, it must in addition inform the jury that

they are the exclusive judges of all questions of fact. Either party may present to the court any written charge and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge presented and given or refused the court must indorse or sign its decision. If part of any written charge be given and part refused the court must distinguish, showing by the indorsement or answer what part of each charge was given and what part refused."

From the foregoing section it appears that the trial court must instruct the jury on all matters of law which it thinks necessary for their information in giving a verdict. The court is not required to instruct on the law applicable to any degree of the crime other than that charged unless there is evidence which tends to establish a degree different and less than that charged. In this case the state's evidence established, if it established the crime of robbery at all, robbery in the first degree. The evidence on the part of the defendant did not tend to reduce the crime to robbery in the second degree, but the defendant interposed a complete defense to the crime; one which would justify his acquittal either of robbery in the first or the second degree. As no issue was presented by the evidence which tended in any way to reduce the crime to that of robbery in the second degree, the court was not required, in giving the law of the case, to instruct upon that issue. *Foeshee v. State*, 3 Okla. Cr. 666, 108 Pac. 555; *Inklebarger v. State*, 8 Okla. Cr. 316, 127 Pac. 710.

The fifth assignment of error is without merit. There is no evidence in the record that would require the court to instruct in substance on the matters assigned therein. The defendant denied entirely taking any money from the prosecuting witness as charged in the information. His defense was that the money was not taken by him forcibly

from the person of the defendant, or by putting him in fear, but that he grabbed some money off of the gambling table, and that the money was not in the possession of the defendant.

The assignment that the court erred in admitting incompetent, irrelevant, and immaterial testimony is apparently abandoned, as the brief nowhere sets out in substance the testimony of any witness which it is alleged was erroneously admitted, as required by rule 7 of this court (12 Okla. Cr. viii, 165 Pac. x). As was recently held in the case of *Bradshaw v. State*, 16 Okla. Cr. —, 185 Pac. 1102:

"Where counsel for defendant have wholly failed to comply with rule 7 of this court by incorporating in the brief 'the full substance of the evidence admitted or rejected, stating specifically the objection thereto when the alleged error relates to the admission or rejection of evidence.' * * * this court will not closely scrutinize the record for the purpose of substantiating the defendant's claim."

In presenting alleged errors of this kind, it is the duty of counsel, as required by the rule of this court, to present the matter in the brief in such a way that this court may pass intelligently upon the merits of the question without having to search the entire record for the purpose of determining whether any error has been committed. Mixed questions of law and fact like this involve a very considerable time in making research, where rule 7 of this court is not complied with. The numerous cases appealed to this court preclude, and the court is not required to brief these questions, and counsel should at least take time, where the burden is upon them, to present such questions as this in accordance with the court's rule, or else the court will be compelled to treat the same as practically abandoned, and therefore without merit.

It is also contended that the court erred in not granting a new trial on the ground of newly discovered evidence. The newly discovered evidence is contained in an affidavit, attached as an exhibit to the motion for a new trial and in support thereof, of one W. I. Ritchey, who states in substance:

"That he is a resident of Oklahoma City, and that, about two weeks prior to the time Grover Rhoades was charged with robbing B. B. Truscott, he, the said Ritchey, had a conversation with Truscott in which Truscott told him that he, Truscott, and Mosig were going to El Reno and 'trim' the Rhoades boys; that Truscott showed affiant the daub and copping wax which he said he would use if he and Mosig could get the Rhoades boys to play black jack; they could cheat them out of all their money in a short time; that about a month before said conversation affiant had a letter from Mosig, in which he stated he knew where he and Truscott could get some money, and asked affiant if he knew where Truscott was at that time, and, if so, to tell Truscott Mosig wanted him."

It was clearly not error for the court to overrule the motion for a continuance on this ground, as the evidence was not material to the issues, and for the further reason that it was to a large extent cumulative, because the witness Mosig testified that he used the "daub and copping wax" and was caught cheating in the game of draw poker by the defendant, and it was apparent in the trial that the fact that Mosig was caught cheating resulted in breaking up the game and the taking of the prosecuting witness' money by the defendant. Motions for a new trial on the ground of newly discovered evidence are addressed to the discretion of the trial court, and unless the newly discovered evidence is material to the issues, and it is clearly probable that upon a subsequent trial a different result

would occur because of such evidence, a new trial should not be granted. We find no error in overruling defendant's motion for a new trial on the ground of newly discovered evidence.

In this case the record shows that the verdict of the jury was returned on the 18th day of August, 1916, while instructions Nos. 13 and 14, given orally by the court, were not filed and did not become a part of the record in the case until the 19th day of August, 1916. There is nothing in the record to show whether the jury ever received these instructions in writing before the jury concluded its deliberations. Furthermore, the record affirmatively discloses that all the law given to the jury orally by the court was not fully covered by the additional instructions which were afterwards reduced to writing and filed as part of the record in the case.

It appears also that in the colloquy that took place between the trial judge and some members of the jury certain portions of the court's statements to the jury did not fully and fairly to the defendant state the law of the case as applicable to the evidence, and from the record before us it is apparent that the jury was to some appreciable extent misled by matters stated orally by the court which were not at any time incorporated into the written instructions.

Again it appears as a part of the discourse between the trial judge and members of the jury that instruction No. 9, which contained the only affirmative law covering the defense interposed by the defendant, was withdrawn from consideration by the jury, and two additional instructions submitted in lieu therof; yet the record before us indicates that instruction No. 9 was thereafter attempted to be amended orally, and said instruction is incorporated in

the record as part of the instructions originally given by the trial court, although amended by interlineation. It is apparent that, if the jury got the impression that instruction No. 9 was intended to be withdrawn from consideration the defendant did not receive the benefit of any affirmative instruction covering the law applicable to the defense interposed by him. The record before us as to the intention of the trial judge relative to the withdrawal of instruction No. 9 is surrounded with considerable doubt. Had the court left the jury with the instruction as first given, this court would not hesitate to affirm the judgment of conviction, because from such instructions the law of the case was fairly presented without substantial prejudice to the defendant's cause.

In the motion for a new trial the matters occurring between the court and the jury when the jury returned into open court for further information were set up as grounds for reversal, and acted upon adversely to the contentions of the defendant, and proper exceptions saved.

It is apparent to this court that in giving further instructions orally to the jury, the jury was misled as to the law of the case, to the substantial prejudice of the defendant, and that he, by reason thereof, did not receive that fair and impartial trial to which he is entitled under the laws of this state.

After a careful investigation of the entire record in this case, the conclusion is reached that the defendant is entitled to the benefit of a new trial in order that his ground of defense may be more accurately and correctly stated to the jury in the court's instructions, to the end that substantial justice may be afforded him.

For the reasons stated, the judgment of conviction is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

DOYLE, P. J., and ARMSTRONG, J., concur.