## J. L. SHRADAR v. STATE.

No. A-3587.   Opinion Filed Nov. 25, 1921.
Rehearing Denied Nov. 28, 1922.
(210 Pac. 304.)

(Syllabus.)

**Appeal and Error—Burglary—Evidence Sustaining Verdict of Guilty in Second Degree.**—Record examined, and held, evidence sufficient to sustain verdict and judgment, and that the defendant was accorded a fair and impartial trial.

Appeal from District Court, Blaine County; Thomas A. Edwards, Judge.

J. L. Shradar was convicted of burglary in the second degree, and he appeals. Affirmed.

The defendant, J. L. Shradar, was jointly informed against in the district court of Blaine county with one Frank Donahogan and one W. H. Humes, charged with burglarizing a certain garage owned and operated by L. L. Cotton in the town of Greenfield, Blaine county. The breaking and entering of said garage was alleged to have been accomplish-

ed on the 29th day of August, 1918, in the nighttime. The evidence on the part of the state discloses that Cotton, the owner, had left the town of Greenfield at about the hour of noon of the 28th day of August, 1918, and had traveled in a Ford car, accompanied by his wife and children, to the city of El Reno, and there took an interurban to Oklahoma City. Cotton and his family returned to El Reno that evening, got their Ford car, and drove back to Greenfield. They arrived at the city of Greenfield at about 40 minutes after midnight, drove up in front of Cotton's public garage and when they arrived there Cotton heard some noise inside the garage. Cotton entered the garage by the front door, walked back a piece, and picked up an unloaded double-barreled shotgun that was in there, then walked back to the front door and turned on a switch to an electric light just outside of the garage, and about that time he was overtaken by the defendant Donahogan, who thrust a pistol into his breast and demanded to know what Cotton was going to do with the shotgun. Cotton told Donahogan that he (Cotton) was the owner of the garage, and wanted to know what Donahogan was doing in there at that hour of the night. Donahogan replied that he had permission to sleep there that night from the man that ran the garage. Cotton told him that he did not allow anybody to sleep in his garage, that there was a hotel in town, and that he and his companions would have to go some place else. Donahogan then called his two companions, telling them that this was the man that owned the garage, and that they could not stay there that night. Two men, one of whom Cotton testified he believed was the defendant Shradar, then came out of the garage. After they had left, Cotton went to the place where Roy Cooper, who worked for him, was sleeping, wakened Cooper, and after finding that Cooper had not given anybody permission to stay in the garage that

night, but, on the contrary, had securely locked and fastened all openings and entrances to the garage at about 10 o'clock, they both went back to the garage, and there discovered that the three persons who had left had apparently been in the act of burglarizing the garage, as a number of automobile casings Cotton had in stock had been removed from under the counter and stacked up at the front door of the garage, and also quite a number of inner tubes had been taken from their boxes on shelving and packed in a suit case, which had been left by one of these parties when they left. Investigation of the suit case also disclosed a piece of soap wrapped up in some oilcloth, and a piece of the same oilcloth was found in possession of these parties the next day when they were arrested.

After discovering that it was the evident purpose and intention of the parties that had broken into the garage to burglarize it and escape in a Ford car that was in the garage at that time, Cotton called the sheriff of Blaine county at Watonga, and he immediately came to Greenfield in an automobile. As soon as it was light enough Cotton and the sheriff tracked these parties quite a distance east from the town of Greenfield, but because of travel along the roads by school children and stock the tracks became commingled with others about 5 or 6 miles east from the town of Greenfield and that mode of pursuit was abandoned. The evidence discloses that there had been rain that night before Cotton got home, and that it was easy to follow the tracks. After abandoning tracking, the sheriff notified nearby towns to be on the lookout for three men answering to the description that Cotton had given him. This resulted in the arrest of Donahogan, Humes, and this defendant, in the town of Okarche, which is located 15 or 20 miles east of the town of Greenfield, at about 1 o'clock in the afternoon of the 29th day of Au-

gust. At the time of arrest, these parties were eating lunch at a restaurant in the town of Okarche, and had been seen to walk into town from the west. After their arrest they were searched, and each found in possession of a pistol and the defendant Shradar had about $160 in money on his person. They were taken to El Reno by the arresting officer, and placed in jail there. That evening the sheriff of Blaine county and one of his deputies and Mr. Cotton went to El Reno for the purpose of identifying the prisoners and taking them back to Watonga, if they were the right parties. Cotton was able to identify the defendant Donahogan postively as the man who thrust the pistol at him at the time of discovering them in 'the garage. Cotton also testified that in his judgment the other two prisoners were the same men who were with Donahogan in the garage.

The defense interposed by this defendant was an alibi. He testified: That he lived in the city of Enid, Okla., and was in that city all day on the 28th of August, 1918. That he did not leave Enid until about 4:30 o'clock on the morning of the 29th, when he went by train from Enid to the city of Kingfisher to look for work in the harvest fields. After arriving at Kingfisher he started to walk out west of the city in search of work at threshing wheat, when he was overtaken by a man hauling a load of household goods. That he rode with this man for several miles, and left him at a crossroads near a schoolhouse; the defendant at that time having seen some smoke at a distance that he believed was coming from the engine of a thresher. Here it was that the defendant Shradar claims he first came upon and got into the company of Donahogan and Humes, whom defendant says came walking, together with a third man, along the highway by the schoolhouse. The defendant abandoned his intention of looking for work threshing in that community, and determined to walk

back east to the town of Okarche and there take a train back to Enid. This chance coming in contact with Donahogan and Humes was the cause of his arrest; he being mistaken for the third man that defendant says was with Donahogan and Humes when they first met, but whom defendant says deserted them shortly after, by joining and riding with a man who was hauling a load of wheat along the public highway north and south. Defendant had several witnesses, friends of his in the city of Enid, also his mother, who lived there, whose testimony, if they were not mistaken as to dates, tended to substantiate the alibi. The defendant also introduced some witnesses who testified that while defendant lived in the country on a farm near Enid his general reputation as a law-abiding citizen was good, the evidence further discloses that defendant had moved from this farm about 15 months prior to this offense, and in the meantime had spent considerable time in the state of Wyoming.

In rebuttal the state introduced several witnesses who testified to contradictory statements made by the defendant as to his whereabouts on the day and night of the 28th day of August, 1918. A witness was also introduced by the state who testified that defendant was seen in the town of Geary, Okla., about noon either on the 27th or 28th day of August, 1918. There are other facts and circumstances in the evidence tending strongly to the conclusion that the defendant was one of the men who burglarized Cotton's garage in Greenfield on the night between the days of the 28th and 29th of August, 1918. We deem it unnecessary to give a detailed statement of these additional facts and circumstances.

George W. Buckner, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). While the petition in error includes some six assignments as grounds for the reversal of this judgment, no brief has been filed by counsel for the defendant. However, when the cause was called for submission, counsel appeared and orally argued the case, devoting their time to the insufficiency of the evidence to support the verdict and judgment. It was strenuously argued by counsel that the great weight of the evidence, as shown by the record, supports the alibi of the defendant. The evidence is directly in conflict. If the witnesses for the state are to be believed, their testimony leads unerringly to the conclusion that the defendant is guilty of the offense. On the contrary, if the testimony of the defendant's witnesses is to be believed, he was in an entirely different place, and could not have been a participant in the crime. This conflict in the evidence was for the sole determination of the jury. The jury having decided the issue adversely to the defendant, it is not the province of this court to substitute its judgment for that of the jury because of a sharp conflict in the evidence. The jury's decision on questions of fact must stand where there is credible evidence in the record, reasonably leading to the conclusion that the defendant is guilty as charged. Gunter v. State, 16 Okla. Cr. 476, 184 Pac. 797; Rhoades v. State, 16 Okla. Cr. 446, 184 Pac. 913; Hodges v. State, 16 Okla. Cr. 183, 182 Pac. 260.

The instructions of the trial court were exceedingly fair to the defendant, and fully covered the law of the case. The trial court's ruling on the admission of evidence was likewise fair; in fact an examination of this record convinces the court beyond question that the defendant was accorded a fair and impartial trial, and that the evidence is sufficient to sustain the judgment. For reasons stated, the judgment is affirmed.

DOYLE, P. J., and BESSEY, J., concur.