Mary Lou CASSADY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–16192.

Court of Criminal Appeals of Oklahoma.

March 24, 1971.

Rehearing Denied April 30, 1971.

W. B. Ward, Jr., Ada, for plaintiff in error.

Larry Derryberry, Atty. Gen., Larry L. French, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

BUSSEY, Presiding Judge:

Mary Lou Cassady, hereinafter referred to as "defendant," was charged in the District Court of Pontotoc County with the crime of Murder, she was found guilty of Manslaughter in the First Degree, her punishment was fixed at thirty (30) years imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated the evidence at the trial revealed that on February 16, 1970, the defendant's husband, Paul Cassady, was found shot to death in their apartment in Ada. H. L. LaSalle, a bartender, testified that on February 16th the deceased spent about two hours in his tavern and drank two bottles of beer. He left about 2:40 and was not intoxicated. Henry Eischied

testified that he rented a garage apartment to the Cassadys. That on February 16th he observed a woman come down the stairs from the apartment prior to 4:00. Aggie Hensley lived next door to the garage apartment and saw the defendant leave the apartment around 3:00.

Edith May McDaniel saw the defendant driving north at approximately 4:00. She testified on cross examination that she lived next door to the deceased man's parents. That on one occasion the defendant came to her house and called the police and wanted protection from her husband.

Officer Linker testified that he received a call and went to the apartment at 6:00. He identified pictures taken at the scene. There was no evidence of a struggle. Ken Osborn, the undersheriff, testified concerning the scene. Two rifles, a shotgun and a .22 caliber rifle were found in a closet. A hunting knife in a sheath was found in a steel cabinet near the body.

Mrs. Schaffer, the wife of the sheriff in Chickasha testified that the defendant called and said that she thought she had killed her husband in Ada and wanted him to check and find how bad it was. He picked up a female deputy and proceeded to the address given by the defendant. The defendant showed him a .38 caliber pistol in her coat pocket still in the automobile.

Deputy Alma Foster testified substantially to the same events as the sheriff. There was nothing unusual about her personal appearance and she seemed very calm.

Clyde Haskins of the sheriff's office went to Chickasha to return the defendant to Ada. She was advised of her Miranda rights and she stated that "I just had all of it I could take." She said the defendant had been drinking and was argumentative and there hadn't been a fight.

Dr. Welborn examined the body at the scene and had a picture taken of the bullet wound. Dr. Cartmell performed an autopsy and found that the bullet entered the back of the neck and exited on the right side of the nose. The bullet traveled in a horizontal path through the head. There were powder marks around the wound and in his opinion the gun was fired within three to six feet of the victim. A blood alcohol sample was taken which was analyzed to be .19.

The parties stipulated to the testimony of Ray Lambert, a firearms expert, concerning the ballistics test. He could not positively state that the spent bullet was fired from the gun because of the condition of the bullet.

Lonnie Cassady, the deceased's father, testified over the defendant's objection concerning the events of the argument covered in the cross examination of the witness McDaniel. The defendant and the deceased argued over finances. The defendant threw a glass of tea in his face and he slapped her. She went next door and called the police.

Dr. McDonald testified for the defense that he treated the defendant in August, 1969, for injuries she received allegedly from her husband. She called him on February 16th and stated that she thought she had killed her husband. He advised her to call the local law enforcement officials.

The defendant testified that she married the deceased in November 1968. Their marriage was in a constant turmoil because of his drinking. She described the beating she received in August and the fight at his parent's home when she called the police. She went to Chickasha, contacted a lawyer and filed for separate maintenance. He threatened to kill her daughter and shoot her if she didn't return to Ada with him. She agreed to return and continued to have trouble with him and he made other threats. He came home on the 16th drunk and started an argument. He went into the bathroom and told her to close and lock the front door. She went instead to the filing cabinet and took out the pistol and put it in her coat pocket. He shut the front door and started to look for a pair of socks in the filing cabinet. She knew that he would be furious that the gun was moved and remem-

bered the knife was still in the cabinet. She fired one shot and he fell against the wall. She testified that she was afraid for her life when she pulled the trigger. She left the apartment and drove to Chickasha and called Dr. McDonald and Sheriff Schaffer.

On cross examination she admitted that he never had the knife in his hands, nor did she yell for help and fire a warning shot, shoot at his legs or feet or attempt to get away while he was in the bathroom.

The defendant's first proposition of error asserts that the trial court erred in allowing a witness, Lonnie Cassady, not endorsed on the information to testify. The defendant requested the rule and the witness, Lonnie Cassady, remained in the courtroom during the trial. The Court in allowing the witness to testify ruled that the testimony was only for rebuttal purposes of the witness McDaniel for the reason that Mrs. McDaniel's testimony was outside the scope of cross examination (T. 148).

The State had objected to the witness McDaniel's testimony on cross examination being outside the scope of direct at which time they requested permission to call witnesses who were not endorsed on the information. The Court indicated that this would be permitted and no objection was made by the defendant.

This Court has previously held that permitting a witness to testify in chief without having his name furnished to the defendant in a capital case at least two days before trial time is error, but only harmless error. In Plumlee v. State, Okl.Cr., 361 P. 2d 223, we stated in the second syllabus:

"A trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information even after the trial has commenced. This discretion should be exercised with the utmost precaution and ascertain within reasonable means whether the county attorney is acting in good faith. This rule is not adopted to permit the county attorney to lay behind the log and spring new witnesses on the day of trial, but to place a liberal construction upon the statutes as to meet the ends of justice. The failure to endorse witnesses before trial must be by virtue of inadvertence and in good faith, and in any event, permitted only where the defendant's rights are not prejudiced by the endorsement."

■ We are of the opinion that the trial court did not abuse its discretion in allowing the witness to testify on either the grounds that he was not endorsed or that rule had been imposed. The record does not reveal that the defendant's rights were prejudiced by the witness testifying in that she testified substantially to same account of the argument and fight which occurred about a month prior to February 16th. We, therefore, find this proposition to be without merit.

■ The second proposition contends that the Court erred in admitting certain photographs of the body of the deceased which were objected to by the defendant. This Court has repeatedly held that such photographs are admissible in evidence when they have some probative value. In Pate v. State, Okl.Cr., 361 P.2d 1086, we stated:

"Although it is error to receive in evidence gruesome photographs of a homicide victim, designed primarily to arouse the passion of the jury, such photographs are admissible; when they are relevant to the issues before the court and their probative value is not outweighed by the danger of prejudice to the defendant."

The photographs in question were taken at the scene and depicted the room and the body and were identified as true and faithful reproductions of the scene. The defendant's attorney used one of the exhibits in examining the defendant which showed the open filing case and the knife. We are of the opinion that photographs do have probative value and therefore the trial court

did not abuse its discretion by allowing them into evidence.

The defendant next contends that the trial court erred in refusing to give his requested instruction on circumstantial evidence. In the case of Ridinger v. State, 97 Okl.Cr. 377, 267 P.2d 175 we stated:

"It is established law that it is unnecessary to give an instruction on circumstantial evidence unless all of the evidence of the state is circumstantial. In this connection it has been held that the confession of an accused constituted direct evidence and that where there was evidence of a confession having been made by the accused, no instruction on circumstantial evidence should be given."

██ In the instant case the defendant told witnesses that she shot her husband and testified that she killed him. We, therefore, hold that the trial court correctly refused the instruction on circumstantial evidence.

██ The final proposition asserts that the punishment is excessive. This Court has consistently held that it does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court. The jury in this case evidently took into consideration the evidence of the defendant by reducing the crime from a charge of Murder to that of Manslaughter in the First Degree and assessed punishment at thirty (30) years imprisonment. We cannot conscientiously say that this punishment is excessive in that the evidence would have warranted a conviction for the higher offense.

In conclusion we observed that the record is free of any error which would justify modification or reversal and under such circumstances we are of the opinion that the judgment and sentence should be and the same is affirmed.