**Tommy Nolen BATIE and Joe Allen Batie, Appellants,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F-75-528.**

Court of Criminal Appeals of Oklahoma.

Jan. 27, 1976.

Rehearing Denied Feb. 12, 1976.

David K. Petty, Tryon, Sweet, Field & Petty, Guymon, for appellants.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellants, Tommy Nolen Batie and Joe Allen Batie, hereinafter referred to as defendants, were charged, tried and convicted in the District Court, Cimarron County, Case No. CRF–74–49, for the offense of Attempted Robbery With a Dangerous Weapon, in violation of 21 O.S.1971, § 801. Each defendant was sentenced to a term of seven (7) years' imprisonment, with the last two (2) years being suspended. From said judgments and sentences, a timely appeal has been perfected to this Court.

The State's first witness, Angel Vazquez, testified that he lived in Keyes, Oklahoma and was employed at the Stafford Elevator. He stated that in the early morning hours of December 6, 1974, four men broke into his house, hit him with a stick, stabbed him with a large knife and demanded his money. In court he identified defendant Joe Allen Batie as one of the men who had assaulted him and defendant Tommy Nolen Batie as one of the four men present on that evening. He said he was able to break loose and run for help, escaping with $920.00 on his person.

On cross-examination he admitted that he testified at the preliminary hearing that he could not remember defendant Tommy Nolen Batie as being present at the time the incident in question occurred. He also said that at the preliminary hearing he had testified he was attacked by defendant Joe Allen Batie who had cut him with the knife.

L. J. Stafford, Vazquez' employer, stated he took Vazquez to the hospital between 2:30 and 3:00 on the morning of December 6, 1974.

Carlos Crane, assistant manager at the Stafford Elevator, testified that on the previous afternoon Angel Vazquez was in the office counting his money when the defendants arrived and inquired about a job.

J. D. Wheeler, M.D., attending physician for Angel Vazquez, was called to testify for the State over defendants' objections on the ground that defendants had stipulated to the head injuries concerning which his testimony was sought. Dr. Wheeler's testimony regarding the victim's injuries reads as follows:

"A. He had lost a lot of blood. He had deep laceration across the face, cut through to the scalp, cut across his eyes and his nose was broken. He had two large wounds on the back of the head opened to the skull approximately 3 to 4 inches long. He also had a hole in his right leg, a puncture wound. His feet was full of sandburs and number of scrapes and burrs in his hands and feet. He was semi conscious. At the time I was unable to talk to him at all." (Tr. 125)

Bob D. White, Cimarron County Sheriff, testified that he first saw Vazquez in the Cimarron County Hospital on the morning of December 6, 1974. He testified that he took photographs of Angel Vazquez which he identified as State's Exhibits Nos. 2 through 8. He further stated that during his investigation of the victim's residence photographs were taken which comprised State's Exhibits Nos. 9 through 23, showing evidence of forced entry into Vazquez' residence. He also found a two pronged meat fork, State's Exhibit No. 28, on the floor of the residence and a butcher knife,

State's Exhibit No. 29, on the cabinet near the back door.

Ann G. Reed, a forensic chemist employed by the Oklahoma State Crime Bureau, testified that various items of clothing including two pairs of boots were submitted to the laboratory for analysis. She identified all the items of clothing, State's Exhibits Nos. 24 through 27, and testified that they were all positive for human blood except the boots, which were positive for blood of unknown type. She also testified that the butcher knife and meat fork were positive for human blood.

Gilbert Martinez, Undersheriff of Cimarron County, corroborated certain testimony of Bob White.

The State's final witness was Leo F. Harriman, Deputy Sheriff of Cimarron County. He testified that he arrested Tommy Nolen Batie without a warrant at approximately 10:00 a. m. at Batie's residence, and arrested Joe Allen Batie at approximately 2:30 p. m. on December 6, 1974. Upon being shown the various items of clothing, tested by Ann G. Reed, he identified them as those which were worn by the defendants at the time of their arrest.

The State then rested.

Defendant Joe Allen Batie testified that he was at the Stafford Elevator on December 5, 1974, looking for work with co-defendant Tommy Nolen Batie and two other companions, but stated that they were not offered enough money and went elsewhere. He stated that two Mexicans, one of whom was Angel Vazquez, did take the job. He further testified that he, his brother, co-defendant Tommy Nolen Batie, Carl Burnett and Clayton Roach went to the residence of Angel Vazquez sometime in the early morning hours of December 6, 1974. He stated that the four of them went to the front door and upon receiving no response Carl Burnett and Clayton Roach went to the back door. The defendant estimated that 30 seconds later he and his brother followed. When they entered the back door, the victim was covered with blood and the floor was covered with broken glass and blood. The defendant also corroborated Leo Harriman's testimony that the pants, shirt and one pair of boots, entered into evidence, were worn by him on the night in question. He denied that either he or his brother, Tommy Nolen Batie, ever struck Vazquez with a knife or club, and he denied that money was ever mentioned.

The defendants' first assignment of error asserts the trial court erred in failing to instruct on certain lesser included offenses, specifically burglary in first degree, in violation of 21 O.S., § 1431; burglary in the second degree, in violation of 21 O.S., § 1435; felonious assault, in violation of 21 O.S., § 681; assault and battery with a dangerous weapon, in violation of 21 O.S., § 645; aggravated assault and battery, in violation of 21 O.S., § 647; and, intimidating laborers in violation of 21 O.S., § 837. The defendants are thus urging that the trial court's failure to instruct on these as necessary lesser included offenses violates 22 O.S.1971, § 916 and the principle that the court must submit instructions which include the applicable law necessary to resolve all the material issues raised or suggested by the evidence, citing *Bailey v. State*, Okl.Cr., 536 P.2d 985 (1975); *Reeves v. State*, Okl.Cr., 535 P.2d 706 (1975); *Tarter v. State*, Okl.Cr., 359 P.2d 596 (1961); and, *Woodruff v. State*, 74 Okl.Cr. 289, 125 P.2d 211 (1942). We do not agree.

In the instant case the victim, Vazquez, testified that the defendants, Joe Allen Batie and Tommy Nolen Batie, were two of the four men who broke into his house in the early morning hours of December 6, 1974, demanding at knife point his money, and after being beaten and cut he escaped to a friend's house. Defendant Tommy Nolen Batie did not take the stand to testify. Defendant Joe Allen Batie took the stand and testified that he and his brother, along with Carl Burnett and Clayton Roach, did go to Vazquez' house on De-

cember 6, 1974, at approximately the same time that Vazquez testified the incident in question occurred. He stated that they went there merely to talk to Vazquez about Vazquez' having taken the job hauling hay at the Stafford Elevator. He stated that upon their arrival at Vazquez' house they approached the front door and knocked, but upon observing a padlock on the door Carl Burnett and Clayton Roach proceeded around the house to the back door with the defendants remaining on the front porch. Joe Allen Batie testified that after a short period of time he and his brother proceeded around the house at which time he heard noise and observed the back door to be open. He stated that Clayton Roach was choking Vazquez. He stated that he observed Roach throw Vazquez toward the cabinets. At no time, he testified, did he see anyone holding a knife on Vazquez, nor did he see anyone hit Vazquez with a club. After Vazquez ran out of the back door they all left. According to Joe Allen Batie's testimony, neither he nor his brother, Tommy Nolen Batie, participated in the alleged offense.

■■■■■ This Court has repeatedly adhered to the general rule in Oklahoma that the instructions given to the jury are left to the discretion of the trial court, and that such discretion will not be interfered with as long as the instructions, considered as a whole, fairly and accurately state the applicable law. See, *Barber v. State,* Okl.Cr., 388 P.2d 320 (1963); *Bradshaw v. State,* Okl.Cr., 510 P.2d 972 (1973); *Turman v. State,* Okl.Cr., 522 P.2d 247 (1974); and *Reddell v. State,* Okl.Cr., 543 P.2d 574 (1975). Yet, we do agree with the cases cited by the defendants regarding the principle that they were entitled to instructions whether requested or not upon lesser included offenses of the subject charge, if the evidence so supports. However, the trial court should not instruct upon any degree of a crime or theory of defense which is not supported by the evidence. See, *Rhoades v. State,* 16 Okl.Cr. 446, 184 P. 913 (1919); *Callaway v. State,* Okl.Cr.,

518 P.2d 1277 (1974); and *Nickelberry v. State,* Okl.Cr., 521 P.2d 879 (1974).

■■■■ We are thus of the opinion that under the facts and circumstances herein discussed the evidence does not support any of the offenses as suggested by defendants as being lesser included offenses. Also see, *Rodgers v. State,* Okl.Cr., 510 P. 2d 992 (1973). Therefore, we find no error in the trial court's instructions and for this reason we reject the defendants' first assignment of error.

We choose to discuss next the defendants' fourth assignment of error which asserts that the examining magistrate erred in binding over the defendants for trial when there was a lack of competent evidence at the preliminary hearing. We shall first discuss this contention upon its merits relating only to the defendant Joe Allen Batie. We note the preliminary hearing transcript reflects that the victim, Vazquez, testified that four men entered his dwelling without his permission in the early morning hours of December 6, 1974, attacked him with a knife and demanded his money. At the preliminary hearing, Vazquez identified, in court, defendant Joe Allen Batie as one of the men present on that morning. Such evidence at the preliminary hearing was sufficient to show that a felony had been committed and that there was probable cause to believe the defendant Joe Allen Batie guilty thereof. The prosecution is only required to show that a crime has been committed, and probable cause that defendant committed it, to entitle the defendant bound over for trial to answer to the charge. See, *Marks v. State,* 94 Okl.Cr. 425, 237 P.2d 459 (1951). We are thus of the opinion that the defendant, Joe Allen Batie, was properly bound over for trial to answer the charge of attempted robbery with a dangerous weapon.

We next consider the defendants' fourth assignment of error upon its applicability to defendant Tommy Nolen Batie. The defendant, Tommy Nolen Batie, urges that the victim could not identify him at the

preliminary hearing as having been present on the night of the incident in question and that the only evidence upon which he was bound over for trial was a confession which was obtained as the result of an illegal arrest and in violation of his constitutional rights. Defendant cites *Brinlee v. State,* Okl.Cr., 403 P.2d 253 (1965). His contention is well taken.

The record of the preliminary hearing reflects that the victim could not remember the defendant Tommy Nolen Batie as being present at the time the incident in question occurred. The transcript of the preliminary hearing reads as follows:

"Q. Alright. How many people came in when the door was pushed open?

"I. Four.

"Q. Are any of the four men who broke in present in the courtroom today at this time?

"I. Yes sir.

"Q. Would you ask him please to get up and point to the individuals that broke into his home that are in the courtroom at this time.

"A. (Indicating).

"Q. I see he indicates to one of them, ask him to walk up and point. Just the one?

"I. He can't remember the other one, but he knows for sure one of them.

"Q. And the one he identified is the one in the blue coat?

"I. Yes sir.

"THE COURT: Maybe for the purpose of the record identify him by name, will you, before you leave that.

"MR. FOSTER: If I can remember which one it is, Your Honor. I believe that's Joe Batie, isn't it? That he indicated.

"THE COURT: Do you want a little recess, Mr. Foster?

"MR. FOSTER: Yes, may I have a recess?

"THE COURT: Mr. Hensley, in order to expedite matters what is the gentleman's name seated right to your left?

"MR. HENSLEY: I am advised that is Joe, Your Honor.

"THE COURT: Okay, thank you. We'll proceed.

"MR. FOSTER: Would the record reflect that he did identify Joe Batie as one of the men that was involved in this.

"THE COURT: We'll proceed."

The record further reflects that Cimarron County Sheriff Bob White testified that he had occasion to have a conversation with the defendant Tommy Nolen Batie after the defendant was arrested and advised of his rights, and that at that time the defendant made certain statements concerning the incident in question. (PH 25) The record reflects that the defense counsel objected to the State's offer of any evidence to show any purported admission by defendant Tommy Nolen Batie and that defense counsel sought to have a hearing to test the admissibility of the purported admissions by defendant Tommy Nolen Batie. The record reflects the court held the objection in abeyance and allowed the testimony of Sheriff White, which in effect was that defendant Tommy Nolen Batie admitted going to the residence of Vazquez with an intent to commit a robbery and that after entry was gained Vazquez was beaten severely but was able to escape. At the conclusion of the preliminary hearing, both defendants were bound over for trial.

The defendants, on the day of arraignment, filed a motion to sever and a motion to dismiss with the substance of defendant Tommy Nolen Batie's motion being that absent the evidence of the illegally obtained confession, the evidence at the preliminary hearing was insufficient to connect him with the crime and, thus, he should not have been bound over for trial.

■ The record of the preliminary hearing is totally devoid of testimony of any facts within the personal knowledge of

the police which would give rise to probable cause for them to believe that Tommy Nolen Batie committed the felony in question and show some exigent circumstances to necessitate a warrantless entry into defendant Tommy Nolen Batie's home to arrest him. See, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). After a careful consideration of the facts binding upon us, the record is insufficient to establish the legality of the arrest of defendant Tommy Nolen Batie. Therefore, the admissibility of testimony at the preliminary hearing concerning this defendant's confession must be examined in light of the principles enunciated by the Supreme Court in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ We first note that the mere giving of the Miranda warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), does not "alone and per se," dissipate the taint of a defendant's illegal arrest and thus render admissible subsequently obtained inculpatory statements or confession. See, *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). "The question whether a confession is a product of a freewill under *Wong Sun* must be answered on the facts of each case . . . . And the burden of showing admissibility rests, of course, on the prosecution." *Brown v. Illinois,* supra.

■ Since the trial court failed to make the inquiry mandated by Wong Sun to consider the salient attendant circumstances of the arrest and subsequent confession the record is thus insufficient in detail and depth from which the Court could determine the voluntariness of the defendant Tommy Nolen Batie's confession. We therefore find the State has failed to sustain the burden of showing that the evidence of Tommy Nolen Batie's confession, which was introduced at the preliminary hearing, was admissible under *Wong Sun v. United States,* supra, and also *Brown v. Illinois,* supra. Such evidence being the only evidence from which probable cause can be established to believe the defendant Tommy Nolen Batie committed the incident in question, the exclusionary rule to the evidence of the confession must be applied and thus the examining magistrate erred in binding over the defendant Tommy Nolen Batie for the charge of Attempted Robbery With a Dangerous Weapon. For this reason the instant case is reversed and remanded with regard only to defendant Tommy Nolen Batie for further proceedings not inconsistent with this opinion.

■ The remaining assignments of error upon which this appeal is predicated will be discussed with regard only to defendant Joe Allen Batie in view of our disposition of the defendants' fourth assignment of error with regard to defendant Tommy Nolen Batie. The defendants' second assignment of error asserts that the trial committed reversible error in refusing the defendants' request for a severance. After careful examination of the record, we agree with the defense counsel that the record is ambiguous as to whether or not a severance of the defendant Tommy Nolen Batie and defendant Joe Allen Batie was granted at arraignment. However, the general rule as referred to in *Curcie v. State,* Okl.Cr., 496 P.2d 387, 388 (1972), states:

" . . . It is the general rule that the granting of a severance is discretionary with the trial court, and that the Court of Criminal Appeals will not disturb the trial court's ruling, absent a showing that prejudice resulted therein. . . ."

We thus only examine the record to determine whether or not the failure to grant a severance by the trial court resulted in prejudice to the defendant Joe Allen Batie. The record reflects that the confession of defendant Tommy Nolen Batie was not introduced into evidence which distinguishes the instant case from *Fugett v. State,* Okl. Cr., 461 P.2d 1002 (1969), as cited by defendants. We further note that the victim

positively identified at the preliminary hearing and at trial the defendant Joe Allen Batie as a participant in the incident in question. We further note that the defendant Joe Allen Batie testified at trial regarding his version of the incident in question. We therefore conclude that there was no showing that the failure to grant a severance in the instant case prejudiced the defendant Joe Allen Batie. For this reason we reject the defendants' second assignment of error.

Defendants' third assignment of error asserts the trial court erred in its refusal to suppress the statements and evidence taken from defendant Tommy Nolen Batie after an illegal arrest and illegal search and seizure. We deem it unnecessary to discuss this assignment of error in light of our previous disposition of the defendants' fourth assignment of error.

The defendants' fifth assignment of error asserts that State's Exhibits Nos. 2 through 8, photographs depicting the extent of the victim's injuries, were introduced solely to inflame the passion and prejudice of the jury, lack probative value and as such the trial court erred in admitting the exhibits. The State urges, and we agree, there was some dispute as to the nature of the instrument used in the incident in question and, thus, the photographs have probative value.

■ The general rule as referred to is found in the first paragraph of the Syllabus of *Johnson v. State,* Okl.Cr., 478 P.2d 969 (1970), as follows:

"When a photograph is shown to be a faithful reproduction of whatever it purports to reproduce, it is admissible in evidence, as an appropriate aid to the jury in applying the evidence and this is equally true whether it relates to persons, things, or places."

We further note that when the photographs are relevant to the issues before the court and their probative value is not outweighed by the danger of prejudice to the defendant the photographs should be ad-

mitted. See, *Cassady v. State,* Okl.Cr., 483 P.2d 1169 (1971) and *Abel v. State,* Okl.Cr., 507 P.2d 569 (1973). We are thus of the opinion that the admission of State's Exhibits Nos. 2 through 8, although questionable in content, were not prejudicial in light of the evidence produced at trial. For this reason we reject the defendants' fifth assignment of error.

■ The defendants' sixth assignment of error asserts that, (1) the trial court erred in refusing to grant a continuance; (2) the trial court erred in refusing to grant a change of venue; and, (3) the trial court erred in refusing to quash the jury panel. Defendants asked for a continuance coupled with a change of venue and continuance because of new witnesses which were endorsed 12 days before trial. Both requests were denied. See, *Watts v. State,* Okl.Cr., 487 P.2d 981 (1971), which states this Court's position as follows:

"  .  .  . This Court has consistently held that the granting or denial of a continuance in a criminal case is addressed to the sound discretion of the trial court and will not be disturbed on appeal unless there has been a clear abuse of that discretion.  .  .  . "

The record reveals no such abuse.

■ As to change of venue, the second and third paragraphs of the Syllabus to *Capes v. State,* Okl.Cr., 450 P.2d 842 (1969), stated:

"2. To warrant change of venue on grounds that fair trial cannot be had in the county it must appear that inhabitants of [the] county have fixed opinion as to guilt of the accused to the extent that accused cannot have a fair trial by impartial jury.

"3. Mere fact that there has been widespread adverse pretrial publicity about defendant does not, by itself, establish reasonable probability that defendant cannot obtain a fair and impartial jury at criminal trial."

See also, *Lee v. State,* Okl.Cr., 485 P.2d 482 (1971), and *Robertson v. State,* Okl.

Cr., 503 P.2d 896 (1972). The record of the voir dire does not show that the prospective jurors had a fixed opinion of guilt. Furthermore, *Sam v. State*, Okl.Cr., 510 P.2d 978 (1973), states that the granting of a change of venue is a matter within the sound discretion of the trial court and will only be overturned in case of abuse of that discretion. No abuse occurred in this case.

■ As to the court's refusal to quash the jury, *Goodwin v. Page*, Okl.Cr., 444 P. 2d 833 (1968), states, "[A] defendant can be assured a fair and impartial jury in the face of widespread adverse publicity through the voir dire examination of the jury." The defendants have failed to demonstrate that the jury impanelled was not impartial.

In conclusion we cannot see that the defendants were prejudiced by the trial court's refusal to grant a continuance, change of venue or to quash the jury.

■ In defendants' final assignment of error it is asserted that the evidence produced at trial was insufficient to support the verdict of the jury. We note the record reflects that the victim positively identified the defendant Joe Allen Batie as a participant in the crime. The victim had on his person an unusually large amount of cash which had been received in the presence of the defendant. The victim further testified that at the time the incident in question occurred the defendant asked the victim for his money and as a result the victim suffered a severe beating before extricating himself from his assailants.

In *Gray v. State*, Okl.Cr., 467 P.2d 518 (1970), we referred to the general rule as follows:

" . . . We have repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. . . . "

In light of the facts and circumstances herein presented, we cannot say that the evidence was not sufficient to support the jury's verdict of guilty of attempted robbery with a dangerous weapon as rendered against the defendant Joe Allen Batie.

For the above stated reasons, it is the opinion of this Court that the judgment and sentence of defendant Tommy Nolen Batie be *reversed and remanded* for further proceedings not inconsistent with this decision. The judgment and sentence of defendant Joe Allen Batie is, accordingly, *affirmed*.