Delmar Johnson GRUBBS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13735.

Court of Criminal Appeals of Oklahoma.

April 13, 1966.

Gary W. Sibley, Tulsa, for plaintiff in error on appeal.

Charles Nesbitt, Atty. Gen., Terry Shipley, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

This is a post-conviction appeal, permitted under the provisions of Senate Bill No. 152, passed by the Oklahoma Legislature in 1965.

This is the fourth time this defendant has been before this Court in connection with this same conviction. On July 8, 1964 he filed an application for mandamus to require the district court of Tulsa County to furnish him a case made, without cost to him. Writ was denied on July 22, 1964. Grubbs v. Johnson, District Judge, Okl.Cr., 394 P.2d 540.

Thereafter, on November 4, 1964 defendant filed herein an instrument denominated a "Petition for writ of error coram nobis," which was treated as a petition for writ of habeas corpus, and denied on December 9, 1964. Grubbs v. State, Okl.Cr., 397 P.2d 522.

On May 7, 1965 defendant filed an application for post-conviction appeal under the provisions of Senate Bill No. 152. All of defendant's pleadings up to and including this application were prepared and filed by him without the assistance of counsel. On June 10, 1965 we granted an appeal (In re Grubbs' Appeal, Okl.Cr., 403 P.2d 260), and ordered the district court of Tulsa County to have the court reporter prepare a case made in case No. 20505 in said court, State of Oklahoma v. Delmar Johnson Grubbs; and to appoint an attorney to perfect such appeal to this Court. This order has been carried out.

Petition in error with case made attached was filed on July 14, 1965 by the attorney appointed by the court to represent defendant in the appeal of his case tried on April 15 and 16, 1964. This attorney subsequently filed a brief in support of his petition in error. In his brief counsel asked permission to file a supplemental brief, and the Court, when the case was submitted, allowed him ten days in which to do so, but no further brief has been filed. The Attorney General duly filed a brief on behalf of the State.

A statement of the facts in this case seems to be in order.

This defendant was charged on February 14, 1964, together with Ronnie Charles Lee and Paul Goldsmith Warner, with robbery with firearms, on the night of January 30, 1964; and it was alleged that this

defendant had been previously convicted in Tulsa County with robbery with firearms in three separate cases, in each of which he was sentenced to serve five years, the sentences to run concurrently.

All three defendants entered pleas of not guilty, and all three waived trial by jury, and were tried together before the court, who found them guilty.

This defendant was sentenced to serve not less than 15, and not more than 50 years in the State Penitentiary. Judgment and sentence was entered on April 21, 1964. Notice of intention to appeal was not given, and motion for new trial was not filed.

We have thoroughly examined the case made now before us, and given every consideration to the rulings of the trial court, and the defense set forth; and have also again considered the contentions made by this defendant in his former pleadings filed in this Court.

This defendant was and is an indigent person, and was represented at his trial by a public defender of Tulsa County.

The defendants named in the information were charged with robbing the liquor store of one Jerry Perrine, doing business as the Suburban Acres Liquor Store, and taking and carrying away certain money and property of value.

Jerry Perrine testified that two negro boys came into his store about 9 p. m. on the date mentioned, one of them carrying a gun, which he described as "a 22 or 23 Armi-Galesi automatic", stating, "Guns are my hobby. I know guns." He described the way the two were dressed, and stated that they held the gun not over a foot from his face. One of them said, "This is a hold up" and they forced him to go into the back room. They took $494.67 from the cash register, and took some whiskey. Witness identified a coat introduced in evidence as being like one that one of the men was wearing; and testified that a bottle of whiskey recovered from an automobile in which the three were riding had his stamp on it. The two boys came into his store by the front door, and left through the rear door. Witness identified this defendant and the defendant Warner as the two men who entered his liquor store and conducted the robbery.

Herschel W. Vahldick testified that he was retired, and was "just an officer, civil defense." He stated that his son found the gun offered in evidence, or one exactly like it, and a pair of jersey gloves and a blank check near his home, about ten feet off the road in the neighborhood where the automobile was abandoned, and the defendant was picked up.

The State introduced five other witnesses, all police officers. Officer Lyle Washburn testified that he was travelling north on the night in question, and saw an automobile going south that had been reported over his "air aerial" as having been stolen. He turned around and chased the car about a mile, the car stopped and three men jumped out and ran. The officer followed one of them, and found him approximately one hundred feet from the car, lying in a drain water ditch. He identified this defendant as one of the persons he saw get out of the car, and the one he later found in the drainage ditch. He testified that this defendant was very uncooperative, and would give him no information whatever, but finally told him his name.

Officer Kermit Horn testified that he and officer Harold Harrison interviewed the defendant Paul Warner, who told him that the three defendants were together and decided to pull a robbery. They walked down the street, saw a car, he and Grubbs walked around the corner, Lee took the car and drove around and picked them up. That shortly thereafter Warner took the wheel, and they drove to the rear of the liquor store, Grubbs and Lee got out and went around to the front, and when they returned to the car Lee had the money. They drove away, and soon discovered a police car following them. The car was not running properly, and Warner was unable to drive faster, so he stopped the car and all three got out and ran. That Grubbs ran in one direction, and Lee in another, and Warner said he followed Lee, because he had the

money. The two ran some distance, hid behind some shrubbery near a house until they thought it safe to leave. They went to a house and called a taxi, and went to Lee's sister's home where they divided the money. Warner said that he got approximately $111. He asked Lee what happened to the change, and Lee said he threw it away as they were running from the car.

Wayne Edmonds, police officer, testified that he was assigned the follow-up investigation on this robbery, and to question this defendant in the city jail. He was accompanied by officer Jim Garrett. He testified that defendant Grubbs told him that he was walking down the street when two men picked him up (he did not know them, and did not know their names), and asked him if he wanted to go to Muskogee. He got in the car with them. They parked behind a liquor store and the two got out, and he sat in the car. The other two went in the building, then returned and got in the car, and defendant did not know anything was wrong until they discovered they were being followed by a police car. One of the men, he did not know which one, said, "we are hot, it is all hot", and they abandoned the automobile and ran.

At the close of the State's evidence all three of the defendants demurred, and the demurrers were overruled.

This defendant did not take the witness stand, but the defendants Ronnie Charles Lee and Paul Goldsmith Warner both testified.

Lee said that he had known Warner about three years, and had known Grubbs ten or twelve years—that he grew up with Grubbs. He testified that he and Grubbs had planned to get drunk that night, and ran into Warner, and they went from one bar to another, drinking. That Grubbs left them, and he did not know where he went. This witness said that in one of the bars he talked with a man named "Dino" whom he had never seen before, and Dino told him that he had some cash hidden out in the country, and described the place. That the next morning he went out to look for it, and was

picked up by Mr. Vahldick. He denied being at the Suburban Acres Liquor Store the night in question, saying, "I have never ever been to a liquor store, and wouldn't know it if I seen it."

The defendant Warner testified, and denied any connection with this robbery.

From this summary of the evidence, it can be seen that there was a direct conflict in the evidence presented to the trial court. There is no question as to the sufficiency of the evidence. The only question is the weight which the trial court chose to give to the evidence of each witness. The trial court had ample opportunity to observe the defendants and the witnesses; and we find no fundamental error in this trial.

In his petition in error the attorney appointed by the court to perfect this appeal sets out seven assignments of error, but in his brief argues only one error. That is:

> "The verdict and sentence of the Judge was a result of passion and prejudice, and partially created by the county attorney, and that the punishment assessed this defendant was excessive and unmerited by the evidence."

Counsel cites a number of cases in which this Court has modified the sentence pronounced. There is no question about this Court being authorized to modify a judgment and sentence when necessary or proper. Title 22 Okl.St.Ann. § 1066 grants appellate courts that authority.

However, in the case of Hisel v. State, 97 Okl.Cr. 356, 264 P.2d 375, we said:

> "Where jury is waived the finding of facts by the trial court will be sustained on appeal where there is competent evidence in the record reasonably tending to support his finding."

And see also: Heald v. State, 78 Okl.Cr. 130, 145 P.2d 206; Parker v. State, 93 Okl. Cr. 163, 225 P.2d 1031; Dunlap v. State, Okl.Cr., 272 P.2d 469; Melton v. State, Okl. Cr., 272 P.2d 577.

Defendant could have received a life sentence (21 Okl.St.Ann. § 801) and we see no

reason to modify the judgment and sentence rendered. Defendant has been in the penitentiary before for armed robbery, and as stated by the Attorney General, it is apparent that the defendant has not yet been rehabilitated, and that he has in fact become a habitual criminal. We do not consider the punishment excessive, under the circumstances.

We find that the defendant Delmar Johnson Grubbs received a fair and impartial trial, and that none of his constitutional or statutory rights were violated.

For the reasons herein stated, the judgment and sentence of the district court of Tulsa County is affirmed.

NIX, J., concurs.

BUSSEY, P. J., not participating.