**Richard ESCOBEDO, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–154.**

Court of Criminal Appeals of Oklahoma.

Jan. 6, 1976.

Bill Sexton, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

BLISS, Judge:

Appellant, Richard Escobedo, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Comanche County, Case No. CRF–73–605, for the offense of Unlawful Delivery of Marihuana in violation of 63 O.S.1971, § 2–401, ¶ B–2. His punishment was fixed at a term of three (3) years' imprisonment and a fine in the amount of Three Thousand ($3,000.00) Dollars was assessed. From this judgment and sentence, a timely appeal has been perfected to this Court.

The State's first witness at trial was Dean Nowe who testified that he was a detective with the Narcotics Division of the Lawton Police Department and that on the 21st of September, 1973, he participated in a drug investigation involving the defendant. He stated he was assisted by Detective Jim Ingram and one Burt Nash, an informer who had been utilized on previous occasions, but who had also been arrested for sale of marihuana and thereafter released. The witness recalled the events of September 21, 1973, and stated that on that day he received a telephone call from Nash at approximately 5:30 p.m. whereafter he and Detective Ingram met at 8:30 at McMahon Auditorium located at Seventh and Ferris Streets, in Lawton, Oklahoma, and proceeded to 1926 Cache Road, Apartment B, the residence of Nash. He testified that at this time he positioned a Magnavox cassette tape recorder under a stack of foam rubber padding in Nash's apartment and thereafter gave Nash instructions. Shortly thereafter, Nash received a telephone call to which the witness listened, and the witness heard a voice which was later identified to be that of the defendant. The conversation he heard was as follows:

"I only have four pounds, but I am waiting for someone to bring the two more. . . . If I get the other two pounds, I will bring six; if I don't, I will bring the four. . . ." (Tr. 6)

Defendant asked Nash if Nash's friend was at the apartment and Nash replied, "No, I am going to make the deal myself for him." Thereafter, the defendant stated, "I will see you in about ten minutes." He further testified that shortly thereafter there was another telephone call and he again listened to the conversation in the same manner and overheard the defendant say, "I got the other two pounds, . . . Do you have the money." Nash then replied, "Yeah, $750.00; right?" and the defendant replied, "Yeah. . . . I will see you in about twenty minutes." He stated that he then gave eight $100.00 bills to Detective Ingram who recorded the serial numbers, thereafter giving them to Nash. At approximately 9:10 p.m. he instructed Detective Ingram to position himself out-

side the apartment for surveillance and then the witness entered a large cabinet type closet which was located on the north wall of the living room of Nash's apartment. He stated that the closet was about five feet from the sofa in the living room and that he left the cabinet door open one half inch enabling him to observe the entire living room. He further testified that at approximately 9:30 p.m. he heard a car drive up whereafter Nash arose from the sofa where he had been sitting, turned on the hidden tape recorder and answered the door. He thereafter observed the defendant enter the apartment carrying a large brown paper bag and what appeared to be a pillowcase. Thereafter he observed a drug transaction between Nash and the defendant wherein approximately six pounds of marihuana were exchanged for $750.00. After the sale was consummated and the defendant about to leave, the witness emerged from the cabinet and arrested defendant. He testified that he seized the evidence and upon being shown State's Exhibit No. 1, he identified same as a box in which Detective Ingram had placed the seized evidence. He stated that he had witnessed Detective Ingram place the Lawton Police Deparment evidence seal, bearing the number 0384, over the flap of the box. Upon being shown State's Exhibit No. 2, a brown paper sack, and State's Exhibit Nos. 3, 4 and 5, packages of marihuana, he identified same as having been seized at Nash's apartment on September 21, 1973. He was thereafter shown State's Exhibit No. 7 which he identified as the pillowcase he had observed on that same evening.

An in camera hearing was then held during which time the court heard testimony regarding introduction into evidence by the State of the taped conversation which had been made on September 21, 1973. The court ruled that the defendant's objection to the admissibility of the tape would be overruled.

After the in camera hearing Mr. Nowe continued to testify and upon being shown State's Exhibit No. 8 he identified same as being the cassette which he had placed in the tape recorder in Burt Nash's apartment on September 21, 1973, and which was played between 9:30 p.m. and 9:42 p.m. He thereafter gave testimony relating to the custody of State's Exhibit No. 8.

The State's next witness was Jim Ingram who testified he was a Lawton police officer assigned to the Narcotics Division and had been so employed on September 21, 1973, at which time he had been involved in a drug investigation, at Burt Nash's apartment along with Dean Nowe and Burt Nash. He stated that on that evening Dean Nowe gave him eight $100.-00 bills and that he had recorded the serial numbers, thereafter giving them to Burt Nash who put them in his shirt pocket. He testified that he again saw the bills after entering Nash's apartment after the defendant had been arrested and had observed Dean Nowe take those same bills off the defendant, and thereafter had checked the serial numbers against the serial numbers which he had recorded earlier, noting that they corresponded. Prior to entering the apartment, he testified, he had been at a point of surveillance to the apartment and had observed a car arrive, driven by the defendant with a white female, Diane Wilkinson, sitting on the passenger side. Defendant got out of the car, took something out of the car and, thereafter, took a bag out of the trunk which he then carried inside the apartment. He further testified that he subsequently saw the sacks inside the apartment after the arrest had been made. Upon being shown State's Exhibit No. 1, he identified it as a box in which he had placed the seized evidence for mailing. He thereafter was shown State's Exhibit Nos. 3, 4, 5 and 7, and testified that he observed those exhibits on that evening and that he placed said exhibits into the box, State's Exhibit No. 1, for mailing to the Oklahoma State Bureau of Investigation Crime Laboratory. Thereafter he was shown State's Exhibit No. 8 and identified it as a cartridge which was

used in the cassette tape recorder placed in the living room of Burt Nash's apartment on that same evening, and gave testimony relating to the custody of said exhibit.

Don Flynt testified that he was a forensic chemist with the Oklahoma State Bureau of Investigation, whereupon the defendant stipulated to his qualifications as a chemist. The defendant further stipulated that the chemist's examination of State's Exhibit Nos. 3, 4, 5 and 7 revealed the substances to contain marihuana. The witness was thereafter shown State's Exhibit No. 1, and identified it as the box in which he had received State's Exhibit Nos. 3, 4, 5 and 7.

Dean Nowe was then recalled as a witness at which time State's Exhibit No. 8, the cassette tape recorded on the evening of September 21, 1973, was played to the jury and in substance corroborated the testimony of Dean Nowe who had observed the drug transaction between the defendant and Burt Nash on that evening. The State then rested.

The defendant then took the stand and testified in his own behalf stating that he was acquainted with Burt Nash and about one week prior to September 21, 1973, had seen Burt Nash in Lawton, Oklahoma, at which time Nash had come over to his car and asked him if he could get him ten pounds of marihuana. The defendant testified that he had told Nash he was not sure that he could, but that he would look around for it. He stated that this incident occurred on Tuesday afternoon and subsequently on Friday afternoon Nash called him. At this time, he testified, he had told

Nash that some man whom he did not know very well had gotten the marihuana and that the price would be $750.00. He testified that he had received no money for obtaining the marihuana for Nash and that he was only just taking it over to Nash's house. On cross-examination he denied making the statement on the tape that "This stuff is better than I have been getting before." He also denied making the statement, "I have already got thirteen one-ounce lids out of this," and further denied making the statement, "I will be getting some good stuff in a few days."

The defendant predicates this appeal upon 12 assignments of error and in the first assignment of error the defendant contends the trial court erred in overruling the defendant's motion to quash the jury panel. The defendant alleges that the irregularities upon which the motion was based include the drawing of the jury not having been "in open court," absence of the physical presence or direction of the District Judge, failure to draw the jury at the statutorily prescribed time, and failure to record the names of the prospective jurors at the time of the drawing. The defendant urges that such facts illustrate the improper manner in which the jury panel was selected and that such irregularities prejudiced the defendant.

The procedure by which a jury is selected must be in conformity with statutory provisions in 38 O.S.1971, § 18 et seq. The actual drawing of the prospective jurors' names from the jury wheel is governed by 38 O.S.1971, § 21.[1] Also, the jury is properly empaneled if the acts of

---

1. Title 38 O.S.1971, § 21, provides:

"At such times as the chief District Judge or the available judge of a court of record of the county may order, the court clerk or one of his deputies and the sheriff or one of his deputies in open court and under the directions of the chief District Judge or the available judge of a court of record of the county shall draw from the wheel containing the names of jurors, after the same has been well turned so that the cards therein are thoroughly mixed, one by one until the number of jurors for grand or petit jury service as di-

rected by said judge or judges are procured and shall record such names as they are drawn upon as many separate sheets of paper as there are weeks for such term or terms for which jurors will be required. The officers attending such drawing shall not divulge the name of any person that may be drawn as a juror to any person. If a grand jury is ordered, the first names drawn to the number stated in the judge's order, not to exceed sixty (60), shall be summoned as grand jurors, and the grand jury shall be empaneled from said persons. If the judge so directs, the

the officials conducting selection of the jury panel are in substantial compliance with the above statutory provisions. See, 38 O.S.1971, § 29.

■ There is no doubt that the statutory provisions governing the selection of a jury panel should be conscientiously followed. However, the solution of the questions raised in each case must be governed by the facts peculiar to that case. *Taylor v. State*, 95 Okl.Cr. 98, 240 P.2d 803 (1952).

■ Also, 22 O.S.1941, § 633, provides in pertinent part that a challenge to a jury panel can be founded only on a material departure from the form prescribed by law in respect to the drawing and return of the jury from which defendant has suffered material prejudice. This statute must be considered with the above statutory method for the drawing of the jury and thus the principles of law adhered to by this Court regarding that statute are applicable in the instant case. See, *Taylor,* supra. We further note that this Court has the task to construe statutes liberally to affect the objects for which they were enacted. See, *Gravitt v. State*, 44 Okl.Cr. 45, 279 P. 968 (1929) and *Stuart v. State*, Okl.Cr., 522 P. 2d 288 (1974). Furthermore, the purpose of the above statutory method for the drawing of jurors must be to insure that jurors will be drawn fairly and impartially, and in order that there can be no suspicion

that the jurors had been secretly handpicked. See *Young v. State*, 41 Okl.Cr. 226, 271 P. 426 (1928) and *Stuart,* supra. This Court has held that to entitle a defendant successfully to challenge the empaneling of a jury, the burden is upon the defendant to show that the wrong complained of is such as to have caused the defendant to suffer material prejudice. *Taylor,* supra, and *Henderson v. State,* 95 Okl.Cr. 342, 246 P.2d 393 (1952) and *McKinnon v. State,* Okl.Cr., 299 P.2d 535 (1956).

We note that the statutory method for the selection of a jury panel has been changed throughout the years,[2] however, the purpose of the statutory method has not changed and we reiterate that such purpose is to secure a fair and impartial jury. Therefore, we feel policy and precedent surrounding the earlier statutes are equally as applicable to the present statute.

■ In the instant case the actions of the officials in drawing the jury panel come perilously close to a substantial and material departure from the statutory provision which would in itself dictate reversal of this cause. However, proof of prejudice to the defendant resulting from the alleged irregularities in the drawing of the jury panel is totally lacking. We further observe that there are no allegations that the drawing of the jury panel was fraudu-

persons summoned for the grand jury panel who are not used thereon may be transferred to the petit jury panel. Additional and other drawing of as many names as the court may order may be had at any such time as the court of judge may order for the completion of a grand or petit jury panel, or for the empaneling of a new grand or petit jury, during any term of court, if, in the judgment of the court, the same shall be necessary, or if, for any cause, the court, in its discretion, shall deem other jurors necessary. The court may excuse or discharge any person drawn and summoned as a grand or petit juror, whenever, in its discretion, such action shall be deemed expedient. No petit juror shall be allowed to serve more than three (3) weeks in any one calendar year unless at the end of a three-week period he is upon a panel

engaged in the consideration of a case, in which event he may be excused when such case is terminated; provided, that if the judge is of the opinion that the jury business of a term of court may be concluded within six (6) days, he may require a petit jury, or a petit juror, to remain until the termination of said jury service, by entering an order to that effect upon the court's journal."

2. Historical note: See, 38 O.S.1971, § 18 et seq.; 38 O.S.1961, § 18 et seq.; 38 O.S. 1951, § 18 et seq.; 38 O.S.1941, § 1 et seq.; St.1931, § 796 et seq.; C.O.S.1921, § 3514 et seq.; R.L.1910, § 3689 et seq.; S.L.1907– 1908, Ch. 48, Art. 3 et seq.; St.1893, § 5163 et seq., and St.1890, § 3191 et seq. Also see, Dak., §§ 7337–7369.

lent in nature nor is it alleged that the officials participating in the drawing of the jury panel were in any way personally interested in said drawing. In this case, the defendant has failed to show how the irregularities of which he now complains did in any way result in any material prejudice to him and, thus, his claim of error is not established. Therefore, under the particular facts and circumstances of this case we find the defendant's first assignment of error to be without merit. Yet, in passing we feel constrained to say that we are in a quandary concerning this lower court's inability to comply with the statutory procedural method outlined in 38 O.S.1971, § 18, et seq.

■ The defendant's second, third, fifth, sixth and tenth assignments of error are not properly before this Court. Where assignments of error are not supported by citations of authority and the record illustrates that the defendant has not been deprived of any fundamental rights, this Court will not search the books for authority to support the defendant's assignment of error. See *Jones v. State,* Okl.Cr., 453 P.2d 393 (1969).

■ The defendant's fourth assignment of error apparently contends that the trial court erred in admitting State's Exhibit No. 8, the tape recording which was allegedly made on the 21st of September, 1973, when the drug transaction occurred between Burt Nash and defendant. We note the trial court properly conducted an in camera hearing concerning the admissibility of the tape. The substance of the tape was merely corroborative of Dean Nowe's testimony of which Nowe had personal knowledge as he was in Burt Nash's apartment on that evening. We are also of the opinion that the tape was properly admitted and the attendant circumstances of the tape in the instant case are in no way inconsistent with the principles promulgated by the Supreme Court of the United States in *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453, reh. den., 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156

(1971). For these reasons we find the defendant's fourth assignment of error to be without merit.

The defendant's seventh, eighth and eleventh assignments of error apparently deal with the issue as to whether or not entrapment as a matter of law was established in the instant case.

This Court defined "entrapment" in *Crosbie v. State,* Okl.Cr., 330 P.2d 602 (1958), in the first paragraph of the Syllabus as follows:

"'Entrapment' is the planning of an offense by an officer, or someone acting under his direction, and his procurement by improper inducement of its commission by one who would not have perpetrated it, except for the trickery of the officer."

Also see, *Riddle v. State,* Okl.Cr., 373 P.2d 832 (1962). In *Riddle,* supra, in the tenth paragraph of the Syllabus, this Court stated:

"Whether a defendant has been entrapped is to be determined by the jury, unless it can be decided as a question of law upon undisputed facts sufficient to establish entrapment. Where there is a conflict in the testimony the court does not err in refusing defendant's request for a directed verdict if submitted to jury with proper instructions."

■■ In the instant case the testimony of Officer Nowe certainly is in conflict with that of the defendant. However, where the evidence is in dispute and does not clearly show that the defendant's act was the product of law enforcement official, the trial court does not err in overruling the defendant's motion for directed verdict as entrapment was not established as a matter of law and thus the trial court properly submitted the question to the jury in Instruction No. 4. Thus, the resolution of the question of entrapment on controversial evidence is a factual question for the jury. See, *Kissick v. State,* Okl.Cr., 504 P.2d 889 (1973). We have repeatedly held that we will not invade the province

of the jury with regard to the jury's resolution of a conflict in the evidence. See, *Williams v. State,* Okl.Cr., 473 P.2d 248 (1970). For these reasons we find the defendant's seventh, eighth and eleventh assignments of error to be without merit.

 The defendant's ninth assignment of error challenges 63 O.S.1971, § 2–401, ¶ B–2, upon the grounds that it amounts to cruel and unusual punishment when the punishment is mandatory without possibility of parole, probation, deferred or suspended sentence.

We must consider the defendant's contention in light of recent legislative enactment, 63 O.S.Supp.1975, § 2–401, which states in pertinent part:

"2. . . . Such sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation except where the conviction is for a first offense. the provisions of this paragraph shall be applicable to all cases under this paragraph whether or not judgment and sentence on the effective date of this act have become final."

We therefore conclude that such recent legislative enactment has rendered the defendant's contention moot as the trial court now has authority to consider the defendant for a deferred or suspended sentence. This Court further advises that this Court's opinion of today does not preclude the defendant from seeking relief on the basis of the recent legislative enactment, supra. On proper application to the trial court, the trial judge may within the discretionary power granted him by statute: (1) vacate the judgment and sentence and defer sentencing under the provisions of 22 O.S.1971, § 991c; (2) suspend execution of judgment and sentence under the provision of 22 O.S.1971, § 991a; or, (3) deny the application. For this reason we find the defendant's ninth assignment of error to be without merit.

 The defendant's final assignment of error asserts that it was improper to allow the State to amend the information from Delivery and Distribution to Delivery or Distribution over the defendant's objection after the jury had been empaneled. We are of the opinion that the amendment to the information in the instant case was accomplished without prejudice to the substantial rights of the defendant. See, *Arms v. State,* 49 Okl.Cr. 34, 292 P. 76 (1930).

For all of the above stated reasons, the judgment and sentence appealed from is, accordingly, *affirmed.*

BRETT, P. J., and BUSSEY, J., concur.