**Russell Gary FOX, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–76–299.**

Court of Criminal Appeals of Oklahoma.

Nov. 23, 1976.

Ed McConnel, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge.

Appellant, Russell Gary Fox, hereinafter referred to as the defendant, was charged in the District Court, Oklahoma County, Case No. CRF–75–1698, with the offense of Assault and Battery with a Deadly Weapon with Intent to Kill, in violation of 21 O.S.1971, § 652. He was tried before the court, after waiving his right to trial by jury, and convicted of the aforementioned crime. His punishment was fixed by the court at ten (10) years' imprisonment in the State Penitentiary. From said judgment and sentence, a timely appeal has been perfected to this Court.

The State called as its first witness, Nora Diane Kelly, the victim of the above mentioned crime. She testified that she was at a friend's apartment in Oklahoma City, Oklahoma on May 8, 1975, picking up some belongings she had left there for storage. A man she identified as the defendant was at the apartment, and he offered to help her load her vehicle. After they made one trip from the upstairs apartment, she testified as to being struck from behind as she re-entered. She ran through the small apartment being pursued by the defendant, and was struck several more times with a hammer. As she was escaping, he again struck her from behind, and she fell down the stairs, breaking her foot. She then ran across the street, to the home of an acquaintance, who sum-

moned an ambulance and the police. Miss Kelly related spending three days in intensive care, and a total of nine days at Baptist Memorial Hospital. She further testified to continuing problems with headaches, prospective plastic surgery, and pain in her foot.

The State next called Nadalia Overstreet, the victim's mother. She testified to being called by the police and notified of the attack, and joined her daughter in the intensive care unit at Baptist Memorial Hospital. She testified to visible injuries, including multiple bruises on the victim's head, several areas where stitches had been taken, damage to the victim's lips and gums, and further contusions on the arms, neck, and body.

The State's third witness was Steve Young, an Oklahoma City Police Officer, who testified to investigating the scene of the incident. He indicated finding the victim, her head and shoulders entirely covered with blood. Upon entering the apartment, he related finding pools of blood in the entry hallway, the kitchen area, and parts of the living room.

Oklahoma City Police Officer Kelly Owens, one of the two arresting officers, next testified, and related giving the defendant the Miranda warning, and thereafter receiving a statement from the defendant that he intended to steal the victim's car. This officer noted blood on the defendant's shirt and jeans.

The State's fifth witness, John G. Hill, testified to being a member of the Oklahoma City Police Department Crime Lab on the day in question. He identified photographs taken of the scene of the crime, and also identified the hammer found at the scene, the blood stains still present.

At this time the State rested, and the defendant's demurrer to the evidence was overruled.

The defendant's only witness was Andrew Smith of San Antonio, Texas, who related being a long time acquaintance of the defendant and the defendant's family. He testified that the defendant's reputation in the community is that of being an honest, peaceable, law-abiding citizen.

The defendant's motion for directed verdict was denied, the defendant was found guilty, and defendant's motion for new trial was denied. From the sentence of ten (10) years, the defendant's appeal is now before this Court.

■ The defendant's first assignment of error is that the trial court erred in permitting the victim of the assault to give testimony about her physical condition and medical treatment subsequent to the attack. We consider this to be a meritless contention, especially considering trial by jury had been waived.

■ It seems to us a baseless assertion that a victim of such an overt injury-producing attack should not be permitted to testify as to the extent of the injuries received. Here, the effect of the blows were not such as would require explanation or qualification by an expert witness, as they were perfectly visible and understandable by a lay person. The long established Oklahoma rule has been that in the absence of the necessity for explanation or qualification, the injuries and cause thereof need not be proved by expert testimony, *Letcher v. Skiver,* 99 Okl. 269, 226 P. 1029 (1924).

■ Further, we hold in the instant case that the trial judge, since he has the skills with which to rule on the admissibility of the evidence, must also possess the ability to "sift" the incompetent evidence and base his decision solely on that evidence he determines to be competent, relevant, and material. This problem was dealt with in *Grubbs v. State,* Okl.Cr., 413 P.2d 328 (1966) wherein we held in the first paragraph of the Syllabus:

"Where jury was waived and case tried before court, presumption on appeal from judgment of conviction is that trial court considered only competent and ad-

missible evidence having material bearing on issues of case and disregarded incompetent evidence admitted."

In the absence of convincing proof that the judge below based his decision on the evidence which may have been erroneously admitted, we are unwilling to disturb his decision.

The defendant next proposes that the trial court erred in overruling his demurrer to the evidence.

The general rule in Oklahoma has been repeatedly stated, and most recently in *Towry v. State,* Okl.Cr., 540 P.2d 597 (1975), that the trial court should not sustain a demurrer to the evidence when there is competent evidence reasonably tending to sustain the allegations of the charge. Accord, *Cox v. State,* 15 Okl.Cr. 133, 175 P. 264 (1918).

■ As to any contention there may be about the competency of the evidence reasonably tending to sustain the allegations, we would refer to Oklahoma Constitution, Art. VII, § 20, and relate the still-valid interpretation thereof in *Hilsmeyer v. Blake,* 34 Okl. 477, 125 P. 1129 (1912). That case indicated that when a case is tried by the court, without the intervention of the jury, on controverted questions of fact, and there is evidence reasonably tending to support the trial court's findings, such findings will not be disturbed on appeal. Accord, *Carbray v. State,* Okl.Cr., 435 P.2d 188 (1967).

■ We find abundant evidence to sustain the decision of the trial court, and are unable to perceive how he could have ruled otherwise. Counsel for the defendant contends testimony and circumstances indicate a lack of ill-will toward the victim, but we can term this contention nothing short of ridiculous. We are confident counsel will not have us believe an unprovoked attack with a hammer, causing critical injuries, is to be interpreted as an expression of friendship.

■ A hammer has been heretofore recognized as a deadly weapon in *Heritage v. State,* Okl.Cr., 503 P.2d 247 (1972), and we must recognize it here in the same way. The manner in which it was employed, the repeated blows to the head, the pursuit of the victim by the defendant, are all sufficient circumstances, in our view, to support the findings of the trial court, and therefore we find the defendant's second contention meritless.

■ As his final assignment of error, defendant alleges the punishment rendered against him was excessive. The maximum penalty under 21 O.S.1971, § 652 is twenty (20) years, so it will first be noted that the defendant received only one half the maximum sentence.

Counsel for the defendant refers to the previous good record of the defendant, and to the fact that some defendants receive less in manslaughter cases, and the fact that this defendant was only nineteen years-old at the time of trial, in his plea for modification of his sentence. However, under the circumstances of the execution of this crime, we rule this contention totally and emphatically without merit.

We have earlier referred to the unprovoked, sneak-type attack, the repeated blows to the head of the victim, the extent and effect of her injuries, and have concluded therefrom that the trial court properly determined that the defendant had the intent to kill. We are without power to modify the sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of this Court. *Gardner v. State,* Okl.Cr., 532 P.2d 1200 (1975).

It is our opinion that the conscience of society as well as that of this Court would be shocked, were we to modify this sentence to a lesser term. While we admit that incarceration of this defendant in no way can compensate the victim for the pain and anguish she has suffered, it is our

judgment that justice and law will best be served by the affirmation of this sentence.

Accordingly it is our opinion that the judgment and sentence appealed from, should be, and the same is hereby, *AF-FIRMED*.

BRETT, P. J., and BLISS, J., concur.