**Fred Charles HAWKINS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–326.**

Court of Criminal Appeals of Oklahoma.

Sept. 16, 1977.

R. Jay Cook, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Jerry Earl Benson, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Fred Charles Hawkins, hereinafter referred to as defendant, was charged, tried by a jury, and convicted in the District Court, Muskogee County, Case No. CRF–76–204, for the offense of Robbery With Firearms, in violation of 21 O.S. 1971, § 801. Punishment was fixed at five (5) years' imprisonment. From said judgment and sentence, the defendant has perfected his timely appeal to this Court.

In the State's case-in-chief, Jane Ray, a liquor store owner's wife, testified that on March 29, 1976, at approximately 6:00 p.m. she was tending the store for her husband. She noticed an older white car pull up in front of the store with two men inside. Approximately 5 minutes later one of the men came into the store and pointed to something on a shelf, and stated he would take that. When she turned to get the bottle from the shelf, the man pulled a large dark gun and told her to open the cash register. She did this and crouched on the floor behind the counter. After emptying the register, the assailant began cursing the witness, and jerking at her clothes. At this point, another man walked into the store and the assailant ordered him to lie on the floor also. The assailant then turned and ran from the store. On June 30, approximately three months after the robbery, the witness positively identified a photograph of the defendant as the assailant from approximately 10 to 15 other photographs. The witness also identified the defendant in court. However, the witness could not identify the white car or its other occupant.

Cleven Coleman, the individual who came into the store during the robbery was the next witness for the State. He testified that on March 29, he went to the liquor store in question to make a purchase. Upon entering, he encountered a man inside holding a gun who told him to lie on the floor or he would, "fill him full of holes." The witness identified State's Exhibit No. 1, as appearing to be like the gun the assailant held in his hand during the robbery. Following the robbery, the witness was shown several photos but could not positively identify any of them. However, approximately a month later, the witness did identify a photograph of the defendant as the robbery assailant. The witness also identified, but not positively, the defendant in court. This witness, as well as Ms. Ray, stated that the assailant was clean shaven and did not have very long hair at the time of the robbery.

Kelly Oliver, an undercover informant for the Muskogee County District Attorney's Office was then called to testify. She stated that she had continuous contact with the defendant during March and April of 1976, as he was an object of investigation. She identified the defendant in court as the person from whom she bought a Browning 9 m.m. automatic on April 5, 1976. This weapon, marked as State's Exhibit No. 1, was identified by the witness as the one she purchased from the defendant on that date. She paid the defendant $100.00 for the weapon. The witness related that she did not know where or when the defendant procured this weapon. She further stated

that during March and early April, the defendant was clean shaven and had moderate length hair, which did not completely cover his ears.

Jay Clinton, Lieutenant for the Muskogee Police Department, testified that he conducted the photographic identification of the defendant by the victim, Ms. Ray. On June 30, he showed Ms. Ray several photographs and he observed her pick out the defendant as her assailant. Following this testimony, the State rested its case. Defendant's motion for directed verdict of acquittal and motion for a mistrial were overruled at that time.

The first witness for the defendant was John Garrett, an attorney in Muskogee. He testified that he was to defend the defendant on a Grand Larceny charge which came on for preliminary hearing on March 30th. On the prior evening, March 29th, at approximately 5:30 or 6:00 p.m., the defendant was at the witness' office in Muskogee to discuss the case for approximately 30 to 45 minutes. The witness stated that a Mr. Bob Tracy, the defendant's brother-in-law, picked the defendant up after the meeting on that evening. On cross-examination, Mr. Garrett testified that he knew the defendant to be driving an older white car during that period, but he was not driving it on the evening of the 29th when he arrived at his office. The witness also testified that on March 29th the defendant had a mustache and long bushy hair.

Lola Tracy, the defendant's sister, was next called to testify. She stated that on March 29th, the defendant called her to get a ride to Mr. Garrett's office at approximately 4:30. However, as she was busy at the time, she told him to call her husband for a ride. The witness, at no time on March 29th saw the defendant, nor did she know what had happened to his car. She also could not testify to whether he had a mustache or long hair on that date.

Robert Tracy, the defendant's brother-in-law, then testified that the defendant called him at approximately 5:00 p. m. on March 29th to get a ride to Mr. Garrett's office.

The witness picked the defendant up and took him to the "co-op" where Mr. Tracy worked. Upon arrival, the witness saw the defendant walk across the street from the co-op to Mr. Garrett's office. After the witness had completed his work at approximately 6:30 or 7:00 p. m., he picked the defendant up at Mr. Garrett's office and took him to his mother's house. On cross-examination the witness stated that the defendant had long bushy hair and a mustache on March 29th. Also, Mr. Tracy stated that he had previously given the defendant a 1960 white Buick, but did not see it on March 29th.

Jack Ashwood testified that he worked at the co-op in Muskogee and knew the defendant. His testimony was that on March 31st, the defendant had long bushy hair and a mustache.

Raymond and David Lackey, also employees of the co-op, testified to the same facts as Mr. Ashwood. The defendant did not take the stand. Following the presentation of this evidence, the defense rested its case.

In rebuttal, the State offered the testimony of nine different witnesses relating to whether or not the defendant had long hair and a mustache during the early months of 1976. Several police officers who had contact with the defendant on another charge testified that on March 15th, the defendant did not have long hair or a mustache. There was also testimony to the effect that in April and May, the defendant did not have long hair or a mustache. Following this testimony the defendant's motion for directed verdict of acquittal was overruled with exceptions allowed. The defendant's motion for new trial, filed thereafter on November 5, 1976, was also overruled.

As defendant's first assignment of error, he asserts that the trial court committed reversible error by admitting into evidence the 9 m.m. Browning automatic weapon as it was not shown that such handgun was used in the robbery or that said handgun was in the defendant's possession at the time of the robbery.

The facts herein establish that both Ms. Ray and Mrs. Coleman identified State's Exhibit No. 1 (the 9 m.m. automatic weapon) as appearing to be similar to the one held in the defendant's hand during the robbery. Additionally Ms. Oliver, an undercover agent for the Muskogee Police Department, purchased the weapon from the defendant only five days after the robbery. In the case of *Harris v. State*, Okl.Cr., 450 P.2d 857 (1969) we stated in Syllabi No. 1:

"A weapon or instrument found in the possession of the accused or of his criminal associates which, although not identified as the one actually used, is similar in form and character thereto, or which, from circumstances of the finding justifies an inference of the likelihood or possibility of its having been used, is admissible for the purpose of showing availability to the accused of the means of committing the crime in the manner in which it is shown to have occurred."

See, also *Beeks v. State*, Okl.Cr., 563 P.2d 653 (1977).

■ It is the opinion of this Court, and we so hold, that the facts in the instant case sufficiently connect the weapon to the defendant at a time near the commission of the crime and, therefore, it was properly admitted under the rule announced in *Harris*, supra.

■ For his second assignment of error, the defendant argues that the State's witnesses interjected "evidentiary harpoons" concerning other possible offenses, thereby constituting reversible error. However, this error was not argued in the defendant's motion for new trial. We have held, on numerous occasions, that only assignments of error presented in the motion for new trial will be considered on appeal, unless such error complained of its fundamental. *Hurley v. State*, Okl.Cr., 416 P.2d 967 (1966), *Chase v. State*, Okl.Cr., 373 P.2d 259 (1969), and cases cited therein. Therefore this assignment of error is not properly before this court for review.

Finally, the defendant argues that the trial court erred in allowing the State to introduce rebuttal testimony which was merely a rehash of its case in chief. In the case of *Dickerson v. State*, Okl.Cr., 422 P.2d 213, 215 (1966) we stated:

"[I]n nearly every case, we find evidence introduced as rebuttal which might properly have been introduced in support of the case in chief, but this is not the sole test. The question which arises and is directed to the discretion of the trial court is whether the evidence offered in rebuttal is a re-hash of the State's case in chief, or whether it pertains to some material issue which has become important because of effect of evidence introduced on behalf of the defendant." (Citations omitted).

■ In the instant case, the State's witnesses stated the defendant did not have a mustache and had moderate hair length. The defendant's evidence, on the other hand, centers almost exclusively on assertions by the witnesses that the defendant did have a mustache and long hair on March 29th. The State was then allowed to rebut this testimony with several witnesses. Under these circumstances it was proper to introduce the evidence of rebuttal witnesses to contradict the defense witnesses' testimony concerning the physical appearance of the defendant on approximately the date of the robbery.

Finding no error that would justify modification or reversal, the judgment and sentence appealed from is hereby *AFFIRMED*.

BRETT, J., concurs.