Randall W. WRIGHT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–233.

Court of Criminal Appeals of Oklahoma.

Nov. 16, 1981.

Gary Peterson, Deputy Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., C. Elaine Alexander, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant was convicted of Burglary in the Second Degree, After Former Conviction of a Felony, Oklahoma County District Court, Case No. CRF–78–462. Punishment was set at twenty-five (25) years.

An Oklahoma City police officer observed appellant as he pulled his Chevrolet onto S.W. 59 Street from Douglas Boulevard at approximately 3:20 a. m. on January 30, 1978. The officer suspected that the appellant and his passenger, Cecil Decker, had broken into a trailer parked near the intersection. After observing the appellant's car weave across traffic lanes and strike a curb, the officer stopped the appellant. According to the officer, the appellant appeared to have been drinking and could not produce a driver's license. Neither could the appellant explain his possession of numerous brand new sporting good items and frozen meat, which the officer observed on the back seat and the front floorboard. The appellant and his passenger were arrested.

After a check by the Oklahoma City Police Department, it was discovered that Ted Reynolds' Sporting Goods Store had been burglarized. Reynolds identified the goods seized from the appellant's car as those missing from his store.

Of the six propositions, only that one regarding the remarks made by the assistant district attorney will be discussed.

First, this Court's attention is drawn to those remarks made by Assistant District Attorney Mark Blasdale during closing arguments to both stages of the trial. It is alleged that the comments were prejudicial and tended to distract the jury from their task of determining the appellant's guilt and punishment. It will be noted that the defense counsel interjected numerous timely objections and that the sustentation of several of these did not prevent the prosecutor from continuing with his improper arguments.

At the close of the first stage of the trial, the assistant district attorney made the fol-

lowing statement, to which an objection was sustained:

> Ladies and gentlemen, I don't anticipate that it will take you very long to reach a verdict of guilty. I think the evidence dictates that is the only proper verdict and I would encourage you not to spend a lot of time in the jury room, we've got business to take care of.

After the objection was sustained, he continued:

> Take all the time that is necessary and proper, but don't linger any more than is necessary.

During the second stage, the following statement was made by the State's attorney, to which an objection was sustained:

> ... I believe Mr. Haynes spoke about the defendant's mother during the Case in Chief and how much she cares for him. I'm sure she does, but let's think about that mother. Let's think about all the problems the defendant has caused her, the worry and the concern about the defendant's career in crime, in and out of jail, wondering what he's doing tonight...

Even after the objection to the previous statement had been sustained, the prosecution continued:

> I submit that she is probably at an age where she shouldn't have to have these problems, she ought not to have to worry and be concerned and afraid, she just doesn't deserve that.

In neither instance did the assistant district attorney observe the court's rulings on defense counsel's objections. He blatantly ignored them, overstepping his role as a prosecutor.

Although there was no objection, we note that Assistant District Attorney Johnson interjected his personal opinion regarding the guilt of the appellant when he stated the following, despite this Court's ruling in *Evans v. State*, 546 P.2d 284 (Okl.Cr.1976):

> ... I look pretty young and I haven't been at this game that long, but I have been in it long enough to know what the difference is between a bad case and a good case. Ladies and gentlemen, this is one of the best I have seen.

The Oklahoma City crime rate and society's reliance on this jury to solve the problem was his focus at one point:

> ... Another thing I want to say is that, you know, you have read about crime and perhaps have even experienced some of it yourself through personal experience and you know that it is around, it's rampant, you can see it.

> ... You are the persons that we now look to do something about it....

This Court has held that it is error for a prosecutor to comment on the crime rate since such statement may induce the jury to punish the defendant for the criminal actions of others. *Coats v. State*, 589 P.2d 693 (Okl.Cr.1978). We have also held that it is improper to indicate society's expectations that the jury convict the defendant. *Kovash v. State*, 519 P.2d 517 (Okl.Cr.1974).

At the close of his argument in the second stage, Assistant District Attorney Blasdale drew the attention of the jury to parole in an attempt to influence them to impose a harsh sentence, and the defense's objection to the following comment was sustained:

> I want to close by saying that the defendant will serve his time in the custody of the Department of Corrections and *that's very broad....* (our emphasis)

An attack on defense counsel was made by Assistant District Attorney Blasdale at the close of the first stage.

> Now, just common sense, and I was really interested and this may or may not have anything to do with you on the jury, but I was really interested to see that every time I said 'common sense' to a prospective juror, the defense would kick that juror off. I don't know whether he believes that there is no common sense sitting on the jury. I want you to stir a little common horse sense into these facts, because the facts speak for themselves.

A comment on defense counsel's strategy during voir dire does not come within the acceptable parameters of closing argument.

Finally, an impassioned reference to first degree burglary was also irrelevant and without inferential quality:

I would like to say something about the sanctity of property in the home. William Pitts said it so much better than I can and he said it in 1763. He said, 'The poorest man may in his cottage bid defiance to all the forces of the crown. It may be frail, its roof may shake, and the wind may blow through it, the rain may enter, but the King of England may not enter. All his force dare not cross the threshhold (sic).' I submit that neither may a thief in the night in Oklahoma County.

Repeatedly counsel for the defense objected to the prosecutor's prejudicial statements. And, in light of those objections which he did make as well as the cumulative effect of the numerous improprieties, this Court finds that all of the quoted comments were prejudicial. *Reeves v. State*, 601 P.2d 113 (Okl.Cr.1979); *Lewis v. State*, 569 P.2d 486 (Okl.Cr.1977). The assistant district attorneys' behavior was intentional, exceeded permissible deductions, and emphasized collateral issues. Even in the face of sustained objections, the objected-to line of argumentation was continued. Such behavior, clearly revealing a bad faith attempt to prejudice the jury, cannot be tolerated.

The effect of these comments was so grossly unfair in this case that there is no viable alternative but to Reverse and Remand for a new trial.

CORNISH, J., concurs.

BUSSEY, J., not participating.