Mickey LANGDELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–82–182.

Court of Criminal Appeals of Oklahoma.

Dec. 22, 1982.

 

Thomas G. Smith, Jr., Associate Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

On June 23, 1981, at approximately 8:00 p.m. Mrs. Vera L. Satterfield was at her home in Poteau, Oklahoma, when a man knocked on her door. The man later identified as the appellant, Mickey Langdell, explained he had previously done odd jobs for Mrs. Satterfield and that he needed to use her phone because he was experiencing car trouble.

Mrs. Satterfield allowed him to enter and use the phone. After he apparently made a phone call, Mrs. Satterfield inquired as to his availability to do some work for some of her friends. Mrs. Satterfield requested a telephone number where Langdell could be reached and proceeded to write his number down on an envelope. While she wrote, the appellant, wielding a knife allegedly attacked her. Appellant allegedly told her not to make any noise and he would not kill her. As Mrs. Satterfield screamed, she was forced to the floor where defendant tied her hands with a shoelace.

At this point she asked him what he wanted and he supposedly replied "I want money." She told him she would give him what money she had. He then proceeded to cut her hands free and asked her where she kept her billfold. Langdell ventured into a utility room and during this interim Mrs. Satterfield ran out of her home to a neighbor's house to summon the police.

The police arrived and Mrs. Satterfield gave them a description of her assailant. They departed and returned with a book of photographs from which the appellant was identified. Langdell was subsequently arrested, the police noted his clothes at the time of the arrest matched the description given earlier by Mrs. Satterfield, and also that the telephone number on the envelope belonged to Langdell's mother.

Mickey Langdell was charged, tried and convicted in the District Court of LeFlore County, Case No. CRF–81–156, for the crime of Attempted Robbery with a Dangerous Weapon and sentenced to twenty-five (25) years' imprisonment. From this judgment and sentence, Mr. Langdell appeals.

■ Appellant alleges several assignments of error, the first of which avers the appellant was deprived of a fair trial and was unjustly and excessively punished because of the prosecutor's repeated improper and inflammatory comments. First and foremost we must point out that the record indicates that appellant never lodged a contemporaneous objection to any of the alleged injurious comments. It is well settled that an objection must be interposed at trial in order to preserve the alleged error for review by this Court. If not, the errors are deemed waived. This Court was presented with a similar issue in *Myers v. State,* 623 P.2d 1035 (Okl.Cr.1981). We made quick dispatch of the alleged error by stating:

> While this Court does not condone remarks by the prosecutor which are obviously intended to distract the jurors from the primary issue of guilt and thereby prejudice the appellant, the alleged errors are not properly before this Court due to the failure of the defense to object to any of these remarks so that the trial court could admonish the jury to disregard the prosecutor's statements. See *Cantrell v. State,* 561 P.2d 973 (Okl.Cr.1977). The policy considerations underlying this rule are to draw the alleged error to the attention of the trial court and to provide that court an opportunity to correct any error at the time of trial. A defendant cannot expect silence in the face of trial error to support the reversal of his conviction on appeal.

Appellant correctly argues that lack of a contemporaneous objection is not controlling upon the situation if the errors complained of are fundamental and prejudicial to the appellant's right to a fair trial. In support of this argument several cases are cited. *Wright v. State,* 637 P.2d 869 (Okl. Cr.1981); *Cobbs v. State,* 629 P.2d 368 (Okl. Cr.1981); *Hager v. State,* 612 P.2d 1369 (Okl.Cr.1980); *Reeves v. State,* 601 P.2d 113 (Okl.Cr.1979); *Lewis v. State,* 569 P.2d 486 (Okl.Cr.1977). However, these cases can be distinguished from the case at bar in that in the cited cases it was the cumulative effect of flagrant prosecutorial misconduct that prompted this Court to hold the failure to object not to preclude review. Without setting out each specific instance complained of, a careful analysis of the prosecutor's comments fails to reveal any such flagrant, gross misconduct. In *Deason v. State,* 576 P.2d 778 (Okl.Cr.1978), this Court quoting from *Battle v. State,* 478 P.2d 1005 (Okl.Cr. 1970), held that the right of argument contemplates a liberal freedom of speech and that the range of discussion, illustration and argumentation is wide.

> Counsel for both the State and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising therefrom, and it is only when argument by counsel for the State is grossly improper and unwarranted upon some point which may affect the defendant's rights that a reversal can be based on improper argument.

The record supports the State's contention that the comments complained of were well within the bounds of propriety based on opinions and logical inferences from the evidence.

■ Appellant further argues that comments by the prosecutor in the second stage of the trial influenced the trial judge's determination of punishment. The State counters by analogyzing the case of *Fox v. State,* 556 P.2d 1281 (Okl.Cr.1976), a case dealing with admissibility of incompetent or improper evidence. The reasoning of this Court in that case supports the basis of the State's current position. In *Fox,* we said:

[W]e hold in the instant case that the trial judge, since he has the skills with which to rule on the admissibility of the evidence, must also possess the ability to 'sift' the incompetent evidence and base his decision solely on that evidence he determines to be competent, relevant, and material. This problem was dealt with in *Grubbs v. State,* Okl.Cr., 413 P.2d 328 (1966) wherein we held in the first paragraph of the Syllabus:

> 'Where jury was waived and case tried before court, presumption on appeal from judgment of conviction is that trial court considered only competent and admissible evidence having material bearing on issues of case and disregard incompetent evidence admitted.'

In the absence of convincing proof that the judge below based his decision on the evidence which may have been erroneously admitted, we are unwilling to disturb his decision.

This Court totally agrees with the Attorney General on this point. A competent judge should be able to cull any prejudicial remarks.

Finally, this assignment of error is without merit because the error was not preserved for appellate review since it was not included in the motion for new trial. *Hawkins v. State,* 569 P.2d 490 (Okl.Cr.1977).

Appellant's next assignment of error contends the trial court committed fundamental error in failing to instruct on lesser included offenses and failing to instruct on essential elements of the crime charged.

■ The general rule is that the trial court should instruct on lesser included offenses, whether requested to or not, only if the evidence reasonably tends to support a lesser included offense. *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980); *Batie v. State,* 545 P.2d 797 (Okl.Cr.1976). We find the evidence showed all the requisite elements necessary to support the charge.

The essential elements of an attempt to commit robbery, as with an attempt to commit other crimes, are set out in the case of

*State v. Thomason,* 23 Okl.Cr. 104, 212 P. 1026 (1923) where this Court held in the second paragraph of the Syllabus:

> An 'attempt to commit a crime' consists of the intent to commit the crime, the performance of some act towards its commission, commonly called an 'overt act,' and the failure to complete or consummate the crime.

Appellant asserts the evidence did not indicate that appellant began any overt aggression against the victim with the specific intent to commit robbery, consequently committing a lesser crime. This is mere speculation on the part of appellant, however, it is of little consequence since this Court in *Fletcher v. State,* 364 P.2d 713 (Okl.Cr.1961), resolved this issue when it quoted from *Traxler v. State,* 96 Okl.Cr. 231, 251 P.2d 815, as follows:

> ... It would seem from the use of the word 'wrongful' that our definition is more limited than the common law definition and that no intent is necessary except the intention of doing the act denounced by the statute. The word 'wrongful' imports in its terms the infringement of some right, and 'wrongful taking' would seem to be any taking of personal property against the will of the possessor, and if accomplished by means of force or fear it is robbery. No state of mind or belief is involved. It is the infringement of the right that makes the act wrongful—something of more value than property is involved. It is the violation of that fundamental right so much cherished in free nations, 'of life, liberty and the pursuit of happiness', and where such rights are violated in the respect stated, coupled with violent means and method employed makes the act recited robbery, so far as defined by our statute....

■ Appellant next alleges the court failed to instruct on essential elements of the charge, specifically the requisite intent and the "asporation" aspects. We do not agree. Again referring to *Fletcher,* supra, cited by the State, we stated in the Syllabus:

5. It is not error for trial court in his instructions to adhere to the plain and unambiguous definition of robbery as related in the Oklahoma Statutes (21 O.S.A. § 791) which does not require the existence of felonious intent. The use of the word 'wrongful' in our statute creates a definition more limited than the common law definition and no intent is necessary except the intention of doing the act denounced by statute.

Equally without merit is the argument on failure to instruct in regards to "asporation" or "carrying away." The instructions in this case included the word "taking" which was approved of in *Fletcher,* supra, as adequately apprising the jury on this element of robbery. Additionally, the asporation element need not be shown in the evidence essential to prove attempted robbery.

■ It is well settled that the instructions to be given the jury are left to the trial court's discretion. This judgment will not be interfered with as long as the instructions, when considered as a whole, fairly and accurately state the applicable law. *Green v. State,* 611 P.2d 262 (Okl.Cr.1980); *Batie v. State,* 545 P.2d 797 (Okl.Cr.1976).

Lastly, in regard to this proposition of error, the appellant waived any error by failing to object to jury instruction at trial and by failing to offer his own instructions. *Jetton v. State,* 632 P.2d 432 (Okl.Cr.1981).

Appellant next complains that his punishment was erroneously based upon improperly joined and insufficiently proven former felony convictions. Again, this contention is totally without merit.

■ First, we note that the appellant waived any error by failing to make an objection and by failing to raise the error in his motion for new trial. *Myers,* supra; *Hawkins,* supra. However, even if appellant had properly preserved the error the argument would still be futile. Appellant contends the State must affirmatively show finality of a judgment before it can be used to enhance punishment. A review of the record indicates the State properly intro-

duced certified copies of judgments and sentences of prior felony convictions. This coupled with the introduction of the second page of the information showing the convictions to be final and not under appeal was enough to establish the finality of the judgments. *Linebarger v. State,* 527 P.2d 178 (Okl.Cr.1974). Furthermore, the appellant presented no evidence at all to rebut the State's prima facie evidence. The burden had shifted to appellant to rebut the prima facie evidence. *Welliver v. State,* 620 P.2d 438 (Okl.Cr.1980).

Appellant also contends that it was improper to admit the judgments and sentences on three separate counts of uttering a forged instrument as three separate felonies for purposes of enhancement because they were all "obviously" connected. We find it unnecessary to decide this issue inasmuch as the record indicates a prior burglary felony conviction coupled with only one of the above convictions would satisfy the requirements of 21 O.S.1981, § 51(B), thus the error, if any there may be, was harmless error. *Miller v. State,* 629 P.2d 370 (Okl.Cr.1981).

■ The last assignment of error argued by the appellant alleges that the trial court improperly overruled his motion to quash the jury panel. Review of the record does not substantiate appellant's contention. Appellant fails to show that the alleged errors occurring at trial caused him to suffer material prejudice. *Escobedo v. State,* 545 P.2d 210, 215 (Okl.Cr.1976). The trial court explicitly said it found no prejudice when it ruled on the motion. The record demonstrates substantial compliance with the statute occurred. *Escobedo,* supra.

Appellant's contention that the cumulative effect of the alleged errors warrants reversal or modification is unfounded since this Court has found all of the assignments of error are without merit.

For the above and foregoing reasons, the judgment and sentence is AFFIRMED.

CORNISH, J., concurs.

BRETT, P.J., specially concurs in results.

BRETT, Presiding Judge, specially concurring in results:

I concur that this conviction should be affirmed. However, I believe the better statement concerning closing argument by the prosecutor provides that the prosecutor is entitled to draw *reasonable inferences* and make *reasonable comments* on the interpretations of the evidence. This is the standard most recently utilized by this Court in its decision on the issue of prosecutorial conduct. *Cobbs v. State,* 629 P.2d 368 (Okl.Cr.1981); *Watt v. City of Oklahoma City,* 628 P.2d 371 (Okl.Cr.1981); and *Reeves v. State,* 601 P.2d 113 (Okl.Cr.1979). The standard of "liberal freedom of speech" and "wide range of argument" implies to many prosecutors that the door is left wide-open concerning closing argument.